[No. 37463. Department Two. February 3, 1966.]

JAMES B. IZETT et al., *Appellants*, v. GARY LEE WALKER et al., *Respondents.**

*Sam Peach* and *Robbins, Oseran & Robbins,* for appellants.

*Russell Millhouse,* for respondents.

DONWORTH, J.—This is an appeal by plaintiffs from a judgment for defendants in a personal injury suit arising

*Reported in 410 P.2d 802.

from a rear-end automobile collision. The judgment for defendants was based on a jury verdict. The motion for judgment n.o.v. or a new trial was denied.

Since the trial court had instructed the jury that defendants were negligent as a matter of law, the issues in this appeal are limited to the question of whether plaintiffs were guilty of contributory negligence and of the appropriateness of certain instructions pertaining thereto.

The accident occurred on Aurora Avenue (Highway 99) just south of the Lynnwood intersection in front of the Lumbermen's Mercantile Store. The date was January 14, 1961, at approximately 4:45 p.m. It had been raining, the sky was overcast, and the pavement was wet. Visibility was about 600 feet. It was not yet dark, but it was dusk.

The traffic was moderately heavy, with continuous streams of traffic in both lanes going north on Aurora. Plaintiffs and defendants were both traveling north in the inside lane. Plaintiff husband's description (corroborated by plaintiff wife) of the accident is as follows: A car which was three cars ahead of plaintiff's car stopped for a left turn from the inside lane. Two intervening cars also stopped. Plaintiffs' car was behind the third car, a Volkswagen, which also stopped. He stated that he had eased off the accelerator and pumped the brakes three or four times as he approached the line of stopped cars. Then as he came nearer the Volkswagen, which was immediately in front of his car, he applied his brakes steadily and came to a stop, bumping the Volkswagen so lightly that no damage resulted from that bump. He had completely stopped when defendants' car violently collided with his car from the rear.

Plaintiff husband further explained in detail that he saw the lead car stopping about 200 yards ahead, and the Volkswagen was then about 4 car lengths immediately ahead. At this time, the lead car was on a slight upgrade, and the approaching cars were on a slight downgrade. The bottom of the grade was reached at about the place where the cars began to brake, and the cars all came to a stop on the upgrade. He stated he was driving at about 35 m.p.h. He

knew that the streets were wet and probably slick and he therefore approached the stop very cautiously, taking his foot off the accelerator and pumping his brakes three or four times as he approached the stopping point, then putting his brakes on in the final stop, just touching the rear of the Volkswagen. His car did not skid in stopping.

On cross-examination, Mr. Izett answered some questions of defense counsel simply "yes," where the defense counsel may have appeared to Mr. Izett that he was paraphrasing the testimony of plaintiff, but where actually the questions totally changed the effect of Mr. Izett's testimony. In effect, Mr. Izett appeared to say, under cross-examination, that he had used only motor compression to slow down until the last moment when he had "finally" applied the brakes, even though he had 200 yards in which to apply his brakes.

The testimony of Mr. Walker, the defendant, and his passenger, Mr. Chapman, differs from the Izetts' description of the accident.

Defendant's version of the accident is that he did not see the cars stopping in front of plaintiffs' car because of its size. At one point, he stated that he knew that other cars were in front of plaintiffs' car, but later he stated that he did not see the Volkswagen, and that he could not and did not see that the other cars were stopping. Defendant further testified that the first warning he had that plaintiff driver was going to stop was when the brake lights came on and stayed on. He admits that he may not have been watching plaintiffs' car at all times immediately prior to the collision because he was trying to return to the outside lane and was watching traffic for an opportunity to change lanes. He was driving at about 35 m.p.h., which he states was the same speed as plaintiffs' car was going. He was constantly maintaining the same distance between the two cars until immediately prior to the collision.

The testimony of his passenger, Mr. Chapman, was that the rear end of plaintiffs' car was raised high at all times during the stop as if the car were in an emergency stop, and that it remained in that position until the collision occurred. His testimony was that he was certain that the

space between the cars was about four or five car lengths up to the time of plaintiffs' emergency stop, and that no signal with brake lights by intermittent braking occurred because he, Mr. Chapman, was watching the traffic ahead at all times relevant to, and prior to, the collision.

The testimony of defendant and his passenger shows that neither of them knows from his own observation whether the plaintiffs' car was stopped at the time defendants' car skidded into the rear end of it. Defendant testified that he believed plaintiff's car was then stopped, but his passenger disagreed, based on his reasoning that the car could not have been stopped since the rear end was still elevated as if still braking. Both, however, admit that they do not know of their own knowledge that plaintiffs' car was still in motion.

Appellants have made 14 assignments of error. The first 10 assignments relate to certain instructions given by the trial court to the jury, which they claim should not have been given because of the lack of evidence to support them. Assignments 11 and 12 pertain to the failure of the trial court to give requested instructions, No. 25 and No. 27. Assignments 13 and 14 pertain to the failure of the trial court to grant various trial and post-trial motions for judgment or a new trial.

If any one of these assignments is sustained, the judgment must be reversed and a new trial granted.

Assignment No. 11 reads:

The trial court erred in refusing to give the jury appellants' proposed Instruction No. 25, which reads as follows:

"You are instructed that the duty is upon the driver of a vehicle which is following another vehicle to keep such distance from the vehicle ahead of him, and to maintain such observation of the vehicle ahead of him, that by the exercise of reasonable care such emergency stop as may be dictated by ordinary traffic conditions may be safely made."

Failure to give this instruction was error because this instruction would correctly advise the jury that the primary duty of avoiding a collision is upon the following

driver, and without this instruction the jury could not properly evaluate any claims of contributory negligence and proximate cause on the part of appellants' conduct.

The trial court gave as its reasons for not giving the instruction:

Court: At the risk of being slightly facetious, if a man is dead, you don't kill him more dead by hitting him again, do you?

Counsel: No, I concede that your honor.

Court: If I held the defendant guilty of negligence, then there certainly is no need for an instruction, is there, on his primary duty or some additional duty he owes to the plaintiff.

The record shows that appellants' counsel had attempted to explain to the trial court (immediately prior to the court's comments) why the instruction was necessary in order to advise the jury concerning appellants' theory of the case. We think that the trial court should have given the requested instruction.

It is an established rule in this jurisdiction that, when two automobiles are proceeding in the same direction in the same lane on a public highway, the primary duty of avoiding a collision is on the driver of the following automobile. Instruction No. 25 is an accurate statement of the law as expressed in *Billington v. Schaal,* 42 Wn.2d 878, 259 P.2d 634 (1953), and cases cited therein.

Counsel for appellant driver correctly appraised the law, when he argued in his brief on appeal,

It is quite clear that the primary duty of avoiding a collision remains upon the following vehicle. *Billington v. Schaal, supra.* He cannot claim that any acts of negligence on the part of the preceding vehicle proximately caused the accident when he was following so closely that he could not make an emergency stop as the ordinary traffic conditions would dictate. . . .

. . . . The jury should have been instructed that the following driver had a duty to follow at a safe distance and to keep such lookout that he could make an emergency stop required by ordinary traffic. The jury could then have decided that the appellants would be entitled

to assume respondent was obeying the law, and appellants could safely make an emergency stop. The jury could, under such reasoning, conclude that appellants did not proximately cause the accident. They could not follow such reasoning if they did not know or were not told that respondent had to follow at a safe distance and keep a lookout. The jury was not so instructed. They did not know what respondent was doing wrong.

This facet of the case was not given to the jury in any instruction. There is nothing in the instructions given to the jury regarding defendant's negligence to indicate what he was doing that proximately caused the accident in the eyes of the law. Under the instructions given to the jury, it was directed to consider if plaintiff driver was negligent, and, if so, whether his negligence contributed to the proximate cause of the collision. But if the jury did not know what act of the defendant might make him legally liable for the collision, how could it decide whether the actions of plaintiff driver contributed to the proximate cause of the collision in the eyes of the law?

 This is reversible error, because there is no instruction given which covers that part of appellants' theory of the case. See *Billington v. Schaal, supra.*

Appellants have made several assignments of error which, in effect, argue that there is no evidence of contributory negligence of appellant driver and that, therefore, the trial court should have directed a verdict for plaintiff, leaving only the issue of damages for the jury. If it were not for the cross-examination of appellant driver, we might well agree.

The cross-examination of appellant driver might cause the jury to believe that he had plenty of time to signal the forthcoming stop, which he was anticipating, but that he failed to give any signal; that, instead, he had slowed his car by motor compression alone, and had "finally" braked, just before he came up to the line of stopped cars. Hence there is sufficient evidence of contributory negligence in this case to go to the jury, although it may be based only on appellant driver's own statements on cross-examination.

The trial court could not have given a directed verdict for plaintiff in view of this cross-examination.

Appellants have challenged the giving of instructions pertaining to the question of whether or not appellant driver was following the car ahead too closely, was driving too fast for existing conditions, and was not keeping a proper lookout. Appellant claims that there is no evidence of such violations of the statutory law in this record. We agree.

There is absolutely no testimony by any of the four witnesses that appellant driver was following too closely, was driving too fast under the circumstances, or was failing to keep a proper lookout. In the absence of some testimony, such jury findings ordinarily might possibly be inferred from the circumstances of the collision. However, in this case the only other evidence is that appellant driver made what would have been a successful stop, barely bumping the car in front, had it not been for the violent collision from the rear by respondents' car.

Even if the jury were to find that the stop was *suddenly* made, prior to which the cars had been traveling a constant distance apart,[1] we come to the same conclusion. The only explanation as to how the collision occurred which might have constituted blameworthy conduct on the part of appellant driver was the series of answers appellant driver himself gave on cross-examination when respondents' attorneys adroitly raised the jury question of appellant driver's failure to give an adequate signal after he had anticipated the stop for about 150 to 200 yards. There is no other substantial evidence in this record of any contributory negligence of Mr. Izett.

 Since there is no evidence from which the statutory violations by appellant driver could be inferred, the jury

---

[1]Respondent and his passenger testified that appellants' car stopped suddenly, and that the cars had been traveling 4 or 5 car lengths apart for some distance, going upgrade. Of course, this is directly contrary to appellant's statement that there was a gradual slowing of his car by the use of motor compression alone or motor compression and intermittent braking together, during which time the space between the two cars would have narrowed.

should not be permitted to speculate as to whether these other violations did, in fact, occur. It is error to submit an issue to the jury when there is no substantial evidence concerning it. See *Albin v. National Bank of Commerce of Seattle*, 60 Wn.2d 745, 375 P.2d 487 (1962).

The judgment of the trial court must be reversed because of the errors discussed above. Appellant is entitled to a new trial. Accordingly, the judgment is reversed and the cause remanded for a new trial on the issue of appellant's contributory negligence and the amount of his damages. Costs of this appeal will abide the outcome of the new trial.

ROSELLINI, C. J., FINLEY and HAMILTON, JJ., and KALIN, J. Pro Tem., concur.