[No. 38486.     Department Two.     July 13, 1967.]

G. CLELL FRANCE *et al.*, *Respondents*, v. CLYDE A. PECK, JR., *Appellant*, THE WILSON MOTOR COMPANY, *Respondent.**

*John A. Henry,* for appellant.

*Reported in 430 P.2d 513.

*McCutcheon & Groshong,* by *W. Ronald Groshong,* for respondents France.

*Bateman, Reed, McClure & Moceri* and *J. E. Thonn,* for respondent Wilson Motor Company.

LANGSDORF, J.†—This action arose out of a three car accident at Seventh Avenue and Seneca Street in Seattle, Washington, at approximately 4 p.m. on December 16, 1961. Seventh Avenue runs generally north-south and is intersected at right angles by Seneca Street which runs generally east-west. Seventh Avenue allowed 1-way traffic only in a southerly direction, while Seneca was a 2-way street. The traffic control signal at the intersection in question was of the green, amber, red type. The distance is 300 feet between Eighth Avenue and Seventh Avenue down the 8.5 per cent incline of Seneca Street.

Clyde Peck was driving his 1959 model taxicab west on Seneca Street midway between Eighth Avenue and Seventh Avenue when he observed the traffic light at the accident intersection turn to amber. He applied his brakes which held for a "gasping minute," but then failed completely, the brake pedal going all the way to the floor. Peck's cab entered the intersection just after the signal light turned red against him and was struck by a southbound car proceeding on Seventh Avenue with the green light. The force of the impact caused Peck's cab to swing on a southwesterly arc and collide with the front of the stopped car driven by G. Clell France. The France vehicle had been proceeding east on Seneca and had stopped on Seneca Street at Seventh Avenue for the east-west red light.

France and his wife instituted this suit against Peck to recover damages resulting from the collision. Peck joined Wilson Motor Company by a third party claim, alleging its negligence in repairs to the taxicab was responsible for the accident. The Frances then amended their complaint to include Wilson Motor Company as a defendant.

---

†Judge Langsdorf is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Testimony at the trial indicated the brake failure was caused by the parting of a steel brake line leading from the master brake cylinder. The break was observed after the accident by Peck and two fellow employees. The parts involved were later scrapped and so were not available at the trial. Charles Smith, a metallurgist, relying on a description of the failure, testified it could have been caused by a structural defect in the steel line at the point where it was flanged to fit into the brake cylinder. If there was such a defect, at some time pressure created by application of the brake pedal would cause the metal to fail, with a consequent total loss of braking power.

Testimony was also introduced which showed Peck had regularly employed Wilson Motor Company to repair the taxi's brakes. On October 23, 1961, a work order showed the two front brakes had been relined and adjusted. On December 11, the front brakes were again relined and the brake drums were turned. Peck testified he would describe the nature of his brake problems and ask Wilson's employees to fix them. Both Peck's and Wilson's employees testified that no mention of the brake cylinder or brake lines was ever made. Alan Taylor, a Wilson employee, stated that it would not be normal or necessary to deal with the master brake cylinder pursuant to such repairs, and that there would be no occasion to remove the brake line entering the cylinder.

Appellant Peck stated he was a bit more than halfway down the block between Eighth Avenue and Seventh Avenue, traveling between 20 and 25 miles an hour, when the light turned to amber and he attempted to slow the car. His left foot was on the brake pedal, his right on the accelerator. He said he was no more than 30 feet from the intersection when the light turned red. He estimated 3 to 4 seconds elapsed between the time he saw the amber light and the collision occurred. During this time Peck continued to pump the brake pedal, attempting to gain braking power. He stated he did not use the emergency brake or honk his horn because he did not have time to think of it and because he was attempting to steer through the intersection.

Respondent France estimated he saw Peck coming down the Seneca hill 6 to 8 seconds before his car was hit.

Testimony indicated that the emergency brake on Peck's car was foot operated and was located to the left of the foot brake pedal. The vehicle was equipped with automatic transmission.

Upon completion of the evidence, Wilson Motor Company moved for a directed verdict against both plaintiffs France and defendant Peck. The trial court ruled Peck was negligent as a matter of law and therefore was contributorily negligent with respect to his third party claim against Wilson Motor Company. The court denied the motion for a directed verdict against the plaintiffs France. Pursuant to the above rulings, the jury was instructed as follows:

> The court has decided that as a matter of law the defendant Clyde A. Peck, Jr. is guilty of negligence *which was a proximate cause of injury* and damage to the plaintiffs and to cross-claimant Clyde A. Peck, Jr. himself.
>
> Thus, there remains for your decision only:
>
> a. The issue of the negligence of the defendant Wilson Motor Company as to plaintiffs, if any; and
>
> b. The cause, nature, extent and amount of plaintiffs' injuries and damages. (Italics ours.) Instruction No. 3.

The jury found Wilson Motor Company was not negligent and fixed plaintiffs' damages against Peck in the sum of $8,000.

Appellant Peck's primary assignment of error on this appeal is that the trial court erred in finding him liable as a matter of law. The court's ruling was based on RCW 46.37.340(1) (as it appeared prior to 1965):

> Every motor vehicle, other than a motorcycle or motordriven cycle, when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels.

The trial judge felt Peck had violated this statute and was thus negligent per se. He stated his reason for this finding at the time exceptions to instructions were taken as follows:

> The negligence, it seems to the Court, beyond any question is not a jury question. Driving the taxicab with his left foot on the brake pedal and his right foot on the accelerator is not permitted, in my view. That part of the statute having to do with two independent braking systems states that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels, and I think the operator must so conduct himself that this is true, under the way the car is constructed.

The case was not tried on the theory that Peck was negligent in the upkeep of his brakes. Nor could it be held, or did the trial court consider there was any negligence regarding alternate action Peck took or might have taken to avoid the collision when he found the brakes had failed. The jury was told Peck was liable because the trial court believed there was negligence causing damage as a result of Peck's driving with his right foot on the accelerator and his left foot on the brake pedal.

The trial court decided two things: That Peck's conduct was violative of the standard of conduct required by RCW 46.37.340, and was therefore negligence; *and* that this negligence was the cause of the accident. Even assuming the first is correct, we must disagree with the second—that is, with the finding of proximate cause as a matter of law.

█ The rule crucial to this appeal is that a causal connection between an allegedly negligent act and harm sought to be reimbursed is a question of fact. Prosser, Torts § 41 (3d ed. 1964), p. 240. The question of negligence may be determined by the court as a conclusion of law where the facts are undisputed and but one reasonable inference can be drawn from them. If different results might be honestly reached by different minds then negligence is not a question of law, but one of fact for the jury. *Baxter v. Greyhound Corp.*, 65 Wn.2d 421, 426, 397 P.2d 857 (1964).

■ This court has been faced with the question of statutory violations and the consequent harm on a number of occasions. The general rule for determining causal connection is set out in *Berry v. Farmers Exch. of Walla Walla,* 156 Wash. 65, 67, 286 Pac. 46 (1930):

> That violation of an ordinance, generally speaking, is negligence, there can be no dispute, but the law is well settled that there must be a causal connection between the negligence arising from the violation of the ordinance and the accident itself, before a cause of action arises from such violation.

The determination of this causal connection is generally for the jury. In *Mathers v. Stephens,* 22 Wn.2d 364, 370, 156 P.2d 227 (1945), we said:

> We have decided that usually the question of proximate cause is for the jury, and it is only when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion that it may be a question of law for the court. [Citing cases.]
>
> . . . .
>
> There are many cases in which we have held, as a matter of law, that the negligence of one violating a statute or ordinance was a proximate cause of an accident, but in those cases the conduct of the party constituting the violation was so clearly a cause thereof that by no process of reasoning could it be said the accident would not have happened if it were not for such conduct. In this case the effect of the statutory negligence of appellant is debatable and open to differences of opinion.

*Gardner v. Seymour,* 27 Wn.2d 802, 180 P.2d 564 (1947) cited with approval the above statement quoted in *Mathers v. Stephens, supra.*

In *Jacklin v. North Coast Transp. Co.,* 165 Wash. 236, 5 P.2d 325 (1931), we were concerned with a similar situation. In that case a woman passenger on one bus was injured when the air brakes of a following bus failed resulting in a rear-end collision. The driver of the following bus had attempted to apply the emergency brake but did so too late to avoid the accident. In that case we approved instructions concerning braking ordinances, submitting for the

jury's determination, the question of causation of the accident.

In the recent case of *Curtis v. Blacklaw*, 66 Wn.2d 484, 488, 403 P.2d 358 (1965), this court used the following language in approving instructions containing the precise brake statute here in point:

> Instruction No. 12 told the jury that all motor vehicles must, by statute, be equipped with good brakes and a serviceable horn; instruction No. 15 declared the violations of statutes governing motor vehicles to be negligence as a matter of law, *imposing no liability unless the negligence proximately caused the injury;* . . . . (Italics ours.) (Footnote omitted.)

After a careful review of the record we are satisfied that the evidence does not admit of but a single conclusion. Instead, the question of causation was one which the jury must answer. Even assuming violation of the brake statute, its effect was open to differing conclusions, considering all the evidence in the case illuminating the circumstances surrounding the happening of the accident.

Furthermore, Peck's failure to sound his horn or apply the emergency brake cannot support the trial court's ruling. Whether it was possible or reasonable to do so in 3 to 4 seconds was likewise a question for the jury. Consequently, the trial court's instruction directing a verdict as a matter of law in favor of respondents France as to appellant Peck's liability was in error.

The jury was not permitted to consider Peck's third party claim against Wilson Motor Company as the ruling of negligence as a matter of law included contributory negligence with respect to this claim, barring any recovery by Peck. In view of our determination that such ruling was in error, the third party claim ruling was also in error.

■ Nevertheless, if there are other grounds upon which Wilson Motor Company's motion for a directed verdict might have been granted, the dismissal must be sustained. ROA 16. Wilson Motor Company argues that the jury determination of its freedom from negligence with respect to plaintiff's claim is binding and res judicata, but this deter-

mination was nonexistent at the time of the motion. Only if the issue could have been determined in favor of Wilson Motor Company as a matter of law may we properly uphold the dismissal of the third party claim.

We must then determine if the evidence presented at the trial would permit a finding of liability on the part of Wilson Motor Company to appellant Peck. We think not. We find no evidence which shows this particular defect could reasonably have been discovered. Mr. Charles Smith, the metallurgist, testified that any defect fitting the failure described would not only have been invisible on inspection, but its location in the flanged end of the line would have been three-eighths of an insch inside the master cylinder.

There was no testimony that the employees of Wilson Motor Company had removed this part of the brake mechanism, or were required or likely to do so, in carrying out the work for which Peck had contracted, relining the front brakes. In fact, Peck himself expected his master cylinder to last the life of the car. Consequently, a directed verdict in favor of Wilson Motor Company against Peck should have been granted as the evidence would not support recovery against Wilson Motor Company.

■ Appellant Peck, during oral argument, urged that a new trial be granted upon all aspects of the case. We see no reason for such a ruling. There were no errors assigned to any matters concerning proof or extent of damages, nor does any part of the record concerning them appear on this appeal. In the recent case of *Bauman v. Complita,* 66 Wn.2d 496, 403 P.2d 347 (1965), we remarked on the propriety of limiting a new trial to the issue of liability when the question of damages is not seriously challenged on appeal. See also *Nelson v. Fairfield,* 40 Wn.2d 496, 244 P.2d 244 (1952). A new trial will be granted with respect to appellant Peck's liability only, the amount of damages sustained by respondents France having already been determined.

Judgment is reversed insofar as the issue of appellant Peck's liability was determined as a matter of law, and the case is remanded for a new trial of this issue. In all other

respects the judgment is affirmed. The awarding of costs on this appeal between France and Peck shall abide the final result of further proceedings in the trial court.

HILL, DONWORTH, ROSELLINI, and HAMILTON, JJ., concur.