[No. 39895. En Banc. December 4, 1969.]

HENRY F. POSTON, SR., *et al., Appellants,* v. THOMAS F. MATHERS *et al., Respondents.*\*

\*Reported in 462 P.2d 222.

*Thomas R. Garlington* and *Skoog, Mullin & Cooper*, for appellants.

*Vincent L. Gadbow* (of *Davies, Pearson, Anderson, Pearson & Gadbow*), for respondents.

HILL, J.—Appellant Henry Poston was the driver of a car in which his wife and minor child were passengers. The Poston vehicle was eastbound on 96th Street in the city of Tacoma. Park Avenue, an arterial, intersects 96th Street at right angles. The intersection is controlled by two stop signs on 96th Street and a flashing red light suspended above the intersection. Appellant Poston came to a stop at the intersection and noted the respondent Mathers' car approaching from the opposite direction on 96th Street. Respondent's car was then about two blocks away.

Appellant Poston activated his left turn indicator,

checked for crossing traffic on Park Avenue, and commenced his turn. As he crossed the center line, his wife cried: "He's not going to stop." Poston saw Mathers' car entering the intersection, and tried to accelerate to avoid the collision, but Mathers' car struck his vehicle on the right front door and rear quarter panel.

Respondent Mathers testified that as he approached Park Avenue he was traveling at 30 to 35 miles per hour until he was "on the stop light almost." He did not see either the flashing red light or the Poston car until he was about 100 feet from the intersection. There was testimony that respondent Mathers was under the influence of alcohol.

Mr. Poston testified that he could not tell whether the oncoming car was going to stop, that he didn't assume that the Mathers car would stop, but that under normal conditions it should have stopped. Mr. Poston was halfway across the white line making his left turn before he realized that the car was not going to stop.

As a result of the accident, Mr. Poston, his wife, and his daughter were injured. Poston brought suit. At the close of defendant's case, the trial court directed a verdict that Mathers was negligent and that a verdict be returned in favor of the Poston child for her general damages. Cross motions as to contributory negligence of Mr. Poston were denied, and the issue submitted to the jury. The jury then returned a verdict denying recovery to Mr. and Mrs. Poston and set the child's damages at $500. Motion for a new trial was denied. Poston has appealed from all portions of the judgment, including the award of damages.

Error is assigned to the denial of the motion to remove Mr. Poston's contributory negligence from the jury's consideration, to the instructions given and denied relating to the respective duties of appellant and respondent, and to the giving of an instruction stating an erroneous formula as to conduct which would constitute contributory negligence.

■ The first assignment of error cannot be supported. Before the trial court can remove the contributory negligence issue from the jury's consideration, the evidence must be such that all reasonable minds would agree that

the plaintiff had exercised the care which a reasonably prudent man would have exercised for his own safety under the circumstances. *Bauman v. Complita,* 66 Wn.2d 496, 403 P.2d 347 (1965). Mrs. Sandra Wolbert, Mr. Poston's married daughter, who was a passenger in a car immediately behind appellants, testified that from her observation of respondent's car before the accident, she knew that it was not going to stop. Mrs. Poston also testified that she realized before the accident that the respondent's car was not going to stop. There was clearly evidence upon which reasonable minds could differ as to Mr. Poston's contributory negligence, and the issue was properly submitted to the jury.

Appellants next assign error to the instructions relating to the respective duties of appellant driver and respondent, which are set out below.[1] As part of the same argument,

---

[1]Instruction No. 6:

"Under the law, one is charged with the duty of seeing those vehicles which he would have seen had he been exercising reasonable care."

Instruction No. 7:

"The laws of the State of Washington provide: [quoting verbatim Laws of 1961 ch. 12, § 46.68.010 (formerly RCW 46.48.010)]"

[The statute was repealed by Laws of 1963, ch. 16, § 8. This instruction, although unobjectionable as a general statement of the duty of drivers as to speed, is no longer a correct statement of the statute law. Counsel's attention is directed to RCW 46.61.400 and the excellent instruction based thereon in WPI 70.05.]

Instruction No. 8:

"The laws of the State of Washington provide:

"The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard." [RCW 46.61.185]"

Instruction No. 12:

"You are instructed that a person is never absolved from exercising reasonable and ordinary care for his own safety, and he cannot thrust all responsibility for his safety upon another, this rule applies at a light controlled intersection, so that one cannot merely depend on another's obeying a traffic signal without observing the situation. Even where a red signal is exhibited, a person cannot rely on an oncoming vehicle stopping, and move directly into its path where one has not looked and observed an indication that the vehicle would stop."

Error was assigned to instruction Nos. 8 and 12.

appellants assign error to withdrawal of the court's instruction No. 9 over their objection, and error is also assigned to the failure to give the instruction which appellants offered, which was modeled upon WPI 70.06.[2]

The appellants contend that the net effect of the omissions and errors was to deprive them of a proper statement of the relative duties of the two drivers. We agree.

It is error to instruct the jury that all rights-of-way are relative and that the duty to avoid accident at intersections rests upon both drivers, unless such instruction is qualified by the statement that the primary duty to avoid collision rests upon the disfavored driver. *Huber v. Hemrich Brewing Co.*, 188 Wash. 235, 62 P.2d 451 (1936). A favored driver on an arterial protected by a stop sign has one of the strongest rights-of-way which the law allows. *Zahn v. Arbelo*, 72 Wn.2d 636, 434 P.2d 570 (1967). Such a driver is entitled to rely heavily upon his right-of-way, although he is still required to exercise ordinary care.

The problem posed by the failure to instruct on respondent's duty is not difficult to describe. Neither negligence nor contributory negligence exists in the abstract. If the jury was not properly instructed and was unaware of the duty which respondent breached, it was unable to de-

---

[2]Instruction No. 9, which was not given, reads as follows:

"A statute provides that a driver approaching a stop sign at an intersection shall come to a complete stop at the point nearest the intersecting roadway where he has a view of approaching traffic before entering the intersection and, after having stopped, he shall yield the right of way to any vehicle which has entered the intersection from another street or highway or which is approaching so closely on the other street or highway as to constitute an immediate hazard during the time the driver who had the duty to stop is moving across or within the intersection.

"This right of way, however, is not absolute but relative, and the duty to exercise ordinary care to avoid collisions at intersections rests upon both drivers. The primary duty, however, rests upon the driver who faces a stop sign, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times."

Plaintiff's instruction (unnumbered) which was refused, is as follows:

"A person using the highway has the right to assume that other persons thereon will obey the traffic laws, and he has the right to proceed on such assumption until he knows, or in the exercise of reasonable care should know, to the contrary."

termine rationally if appellant's breach of his related duty contributed to the cause of the accident. *Accord: Izett v. Walker,* 67 Wn.2d 903, 410 P.2d 802 (1966) (rear-end collision—refusal to instruct on duty of following driver).

 The respective rules of the road governing the duty of each driver have been set out in the margin.[3] It will be seen from examination of those rules that a primary duty to avoid this accident rested upon Mathers, the respondent. The appellant would have been under a duty to avoid the accident only if the Mathers vehicle were so close to the intersection as to constitute an immediate hazard. Given the stop sign which Mathers faced, his vehicle would have constituted such a hazard only if appellant Poston had, or should have, realized that Mathers was not going to stop.

A person using the highway is entitled to assume that other persons thereon will obey the traffic laws, and he has the right to proceed upon such an assumption until he knows, or in the exercise of reasonable care should know, to the contrary. Only when it becomes apparent, or should have become apparent, to the favored driver that the disfavored driver will not yield is the favored driver required to react to the danger. *Petersavage v. Bock,* 72 Wn.2d 1, 431 P.2d 603 (1967).

Appellant Poston's theory of the accident was that he did not observe any indication that Mathers was not going to stop until it was too late to avoid collision. He testified that

---

[3] Appellant Poston's duty is expressed in RCW 46.61.185:

"The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard. [1965 ex.s. c 155 § 29.]"

Respondent Mathers' duty is expressed in RCW 46.61.190(2):

"(2) Except when directed to proceed by a police officer or traffic-control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop as required by RCW 46.61.360 subsection (2), and after having stopped shall yield the right of way to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard during the time when such driver is moving across or within the intersection."

he believed from his observation of the Mathers vehicle that he had plenty of time to make his turn, even if Mathers did not stop. He denied trying to beat the Mathers car through the intersection. He testified he did not realize that Mathers was not going to stop. His testimony is susceptible of several interpretations. However, it is sufficient to support a theory of reliance upon the presence of the stop sign and normal law-abiding behavior upon the part of the disfavored driver. Appellant was therefore entitled to his requested instruction on the right to assume that those using the highway will obey the rules of the road.

█ Failure to give court's instruction No. 9 and appellant's requested instruction deprived appellant of a statement to the jury of his theory of the case and was prejudicial error.

Appellant Poston's third assignment of error goes to the giving of an instruction setting forth actions which, if found by the jury, would constitute contributory negligence.[4] It will be observed that the instruction as given omits mention of a reasonable reaction time.

█ A favored driver is entitled to a reasonable reaction time after it becomes apparent in the exercise of due care that the disfavored driver will not yield the right-of-way. Until he has been allowed that reaction time, he is not chargeable with contributory negligence flowing from omissions or acts regarding his failure to observe or respond to the conduct of the disfavored driver. *Petersavage v. Bock*, 72 Wn.2d 1, 431 P.2d 603 (1967); *Zahn v. Arbelo*, 72 Wn.2d 636, 434 P.2d 570 (1967); *Archibald v. Gossard*, 65 Wn.2d 486, 397 P.2d 851 (1965).

█ The instruction as given purports to list the facts from which contributory negligence could be found. It is a formula instruction, and a fatally defective one, for it omits

---

[4]Instruction No. 11, which reads:

"If you find from the evidence that the plaintiff driver saw, or should have seen, from observing the defendant's vehicle, that the defendant could not, or was not going to stop, and turned into the path of the oncoming vehicle anyway, then you should find the plaintiff contributorily negligent."

the requirement of a reasonable reaction time. Such an instruction is, in and of itself, reversible error.

It is clear that appellants are entitled to a new trial on the basis of their second and third assignments of error, and that the trial court erred in denying their motion for a new trial.[5]

As indicated, the jury returned a verdict of $500 for injuries sustained by Peggy Poston, who was 15 years of age at the time of the accident and 17 at the time of the trial. Judgment was entered for that amount in favor of Henry F. Poston, Sr., as her guardian ad litem.

The verdicts make the mental processes of the jury very clear.

They started with the basis that Mathers was negligent, as they had been instructed to do; denied recovery to Mr. and Mrs. Poston because of Mr. Poston's contributory negligence; and granted recovery to Peggy Poston (through her guardian ad litem) since the contributory negligence of her father could not be attributed to her. *Vioen v. Cluff,* 69 Wn.2d 306, 418 P.2d 430 (1966); *Adamson v. Traylor,* 60 Wn.2d 332, 373 P.2d 961 (1962); *Hilstad v. Seattle,* 149 Wash. 483, 271 P. 264 (1928). The jury understood and followed the instructions of the trial court in awarding damages to the daughter and denying them to the parents.

■ The failure to give the requested instruction which warrants a new trial for Mr. and Mrs. Poston has no bearing on the amount of the general damages sustained by Peggy Poston. The only conceivable basis for another trial on her behalf on the issue of general damages would be that the jury's award was inadequate. The appellants' brief makes no such claim; and on the oral argument, it was not contended that general damages of $500 was per se inade-

[5] This opinion to this point should be credited to Justice Finley. It was written by him as a proposed majority opinion, and to this point the entire court was in accord with him. Since a majority of the court did not agree with his conclusion that a new trial should be granted also on the cause of action of the minor daughter involved in the collision, Justice Hill was assigned the responsibility of preparing the majority opinion, and he, with Justice Finley's consent, has adopted the latter's opinion to this point.

quate. The argument made was that the jury's belief in Mr. Poston's contributory negligence may have caused them to minimize the general damages allowed to his daughter for the injuries she sustained in consequence of the negligence of Thomas F. Mathers.

This argument is without any substantial basis. The trial court was meticulously careful in its instructions. The jury was instructed to return a verdict in her favor, the trial court saying:

> The court has found as a matter of law that the defendant was guilty of negligence.
>
> Therefore, so far as the plaintiff Peggy Poston is concerned, you are directed to find a verdict for her as to her general damages.

(Instruction 2)

The trial court instructed the jury that it could not consider her claim of permanent injury as there was insufficient evidence to support it; and it further instructed that the "trembling hands" condition, of which she complained, was not to be considered, as no medical testimony indicated that it was related to the accident. There is no contention that the trial court erred in withdrawing the claims for permanent injury and trembling hands from the consideration of the jury.

The only suggestion that the contributory negligence of Mr. Poston had any reference to the damages to be awarded to Peggy Poston was the instruction that: "if you find plaintiff husband was negligent, then plaintiff daughter may not recover for her special damages, but may recover only for her general damages."

■ This instruction was unchallenged in any way. It does state the proper rule under the situation presented here. The prayer of the complaint asked for recovery by Mr. Poston for all the special damages proven for himself, his wife, and his daughter Peggy. Consequently, the action was for the benefit of Mr. Poston as regards the special damages of Peggy Poston, not for her benefit. Under such facts the contributory negligence of Mr. Poston would bar his recovery for the special damages of his daughter. *Mc-*

*Candless v. Inland Northwest Film Serv., Inc.,* 64 Wn.2d 523, 392 P.2d 613 (1964); *Cox v. Hugo,* 52 Wn.2d 815, 329 P.2d 467 (1958).

The only matter which remains to be considered is whether there is any basis for the claim that $500 is an inadequate award for the general damages sustained by Peggy Poston.

She complained of headaches, neck injury, low back injury and trembling hands. Objective evidence of any injury was completely lacking.

The "trembling hands" was unrelated to the collision and was expressly eliminated from consideration by the jury, as was any claim of permanent injury.

The family physician, Dr. Charles B. Arnold, saw Peggy on June 2, 1965 (collision was May 30). He took X rays and found no indication of any injury to the bony structure. He was of the opinion that she had recovered from the effects of the collision within 30 days.

He treated her for other matters on August 24 and September 28, and he noted on the former date that she made no complaint about her neck, and on the latter date that she had made no neck or back complaints. (Dr. Arnold was called as a witness by the defendant Mathers, not by the plaintiffs.) Essential portions of his testimony relative to Peggy Poston appear in the margin, note 6.

The only medical witness called by the Postons was Dr. Ray M. Lyle, an orthopedic physician. He first saw the Postons on December 10, 1965 and again on April 29, 1966. His testimony takes up more than 50 pages of the record, but the portion relating to Peggy Poston is relatively brief and the salient portions (together with the other relevant medical testimony relating to her injuries) are set forth in the margin.[6]

---

[6]On direct examination, Dr. Lyle testified as follows: "Q. And what did your examination reveal? A. Well, first I examined her neck. She indicated again the back of her head and the front of her head as the primary location of her pain. Again she said she had no pain in her neck, but her neck occasionally was stiff. I found no abnormalities in the examination of the head or neck. I then turned attention to her back. I asked her to indicate again 'Where do you hurt?' She pointed to

From this testimony there emerges only a low back strain and a mild injury to her neck, with no muscle spasm or objective evidence symptoms of any injury. The X rays showed only a small amount of soft tissue calcification.

On this record we are unable to see any reasonable basis for a claim that $500 is an inadequate award of general damages for the injuries sustained by Peggy Poston as a result of the negligence of the defendant Mathers. The judgment of $500 limited to general damages in favor of Henry F. Poston, Sr., as guardian ad litem for Peggy Poston, should be affirmed.

CR 59 provides that a new trial may be granted to all or any of the parties on all or part of the issues; and for the reasons indicated earlier in this opinion, the plaintiffs Henry F. Poston, Sr., and Myrtle Poston, his wife, are

---

the lumbar region. This is the lower part of the back, between the rib cage and the pelvis. She indicated no extension of her pain anyplace else from the back. The physical examination of the back again was essentially negative. . . . A. Essentially normal. Q. What do you mean by essentially normal, Doctor? A. Oh, the pelvis was level, the spine was straight, the curves were normal, and I found no muscle spasm. There was some soreness in the muscles, which we talked about when we asked about her pain. She could bend forward. She had no muscle weakness; she had no reflex changes—things like that. Q. Did you prescribe any treatment for Peggy? A. No, sir, I did not. . . . Q. And did you again examine Peggy? A. Yes, I did. I saw her on the 29th of April. Q. This is 1966? A. This is 1966. Q. What did your examination disclose? A. At this time she came in because she was having what she described as uncontrollable trembling in her hands. She also had a little stiffness in the neck at this time. At the time of this examination she had a little bit of discomfort in her neck. I could find no neurological abnormality, but because the trembling of her hands was quite distressing to her, I arranged for her to see Dr. Chambers, who is a neurosurgeon in consultation. . . . Q. From your examinations and discussions with Peggy, were you able to form any conclusions? A. Oh, I think she sustained a low back strain and a mild injury to her neck in the automobile accident. . . . Q. Did you take X-rays of Peggy, Doctor? A. Yes., I did. Q. What were the result of those X-rays? A. The X-rays of the neck indicated only a small amount of soft tissue calcification. . . . The X-rays of the neck showed only a little soft tissue calcification, which I did not connect with the injury."

On cross-examination he testified: "Q. Did you at any time in your examination of Peggy, the daughter, find any muscle spasm or objective symptoms of an injury? A. No." Note: Dr. Chambers, the neurosurgeon,

granted a new trial against the defendant Thomas F. Mathers on the issues of the contributory negligence of Henry F. Poston, Sr. and the extent of their damages, if the jury finds there was no contributory negligence. Henry Poston is also entitled to recover the special damages of Peggy Poston if he is not found to have been contributorily negligent.

The $500 judgment for Peggy Poston's general damages is affirmed.

WEAVER, HAMILTON, HALE, NEILL, and McGOVERN, JJ., concur.

---

did not testify and the "trembling hands" factor was eliminated from consideration by the court.

The defendant presented the testimony of Dr. Wendell Peterson, an orthopedic surgeon, and Dr. Arnold, the Poston family physician.

Dr. Peterson on direct: "Q. On the basis of your orthopedic, neurological examination and X-rays, did you form an opinion as to any organic basis for these complaints? A. Yes. Q. What was your conclusion? A. I felt that as a result of her accident, May 30, 1965, she had sustained some strains in the soft tissues of the neck and the lower lumbar area. At this examination, function was entirely normal; there was no consistent pattern of discomfort or pain on different tests. There was no indication of disability as a result of her accident. She had headaches also, and these are common complaints with neck strains, but I felt that in view of the normal function of the neck, and normal X-rays, that her neck, or her headaches were probably on the basis of nervous tension. I felt that the symptoms probably would continue for some time because of the nervous tension. . . . Q. With reference to Mrs. Myrtle Poston and Peggy Poston, [upon] which part of your examination did you base a conclusion that they suffered a soft tissue injury? A. Based on the history of the accident and the complaints that followed, plus the subjective tenderness to touch. Q. There was no objective evidence of this in your examination? A. There was no objective evidence of injury, no."

Dr. Arnold on direct: "Q. And with reference to Peggy Poston what . . . did you say was the period of time for her to recover? A. She was finally seen on September the 28th, 1965, for an upper respiratory infection. When interrogated regarding her neck and back, she had no complaints regarding the same. Therefore, I would conclude that she had made a full recovery from whatever muscular sprains she might have had in the neck and back areas. . . . Q. Did you make any diagnosis that she had, or a conclusion, that she had recovered within 30 days? Do you recall that? A. I'm quite sure that she had recovered within that time. Q. She had? A. Yes."

FINLEY, J. (dissenting in part)—I agree with the majority that the error in the instruction on contributory negligence requires reversal as to appellant Poston. However, as noted by the majority, appellants also contend that they are entitled to a new trial relative to the claim on behalf of the minor child, Peggy Poston. This is on the theory that, as a practical matter, the erroneous instruction regarding contributory negligence of the father may well have affected the jury in determining the damages awarded to the minor daughter.

CR 59 provides that a new trial may be granted as to all or any of the parties and all or part of the issues. ROA 16 indicates the similar power of this court, which was exercised as early as *Auwarter v. Kroll,* 70 Wash. 179, 140 P. 326 (1914).

The test for a new trial in this situation has been described as follows:

> We recognize that there are situations, especially where the evidence as to damages is largely objective and the extent thereof is not seriously challenged on the appeal, where a new trial could well be limited to the issue of liability. However, in the present case, the details of the injury sustained by the plaintiff-driver and the symptoms thereof are largely subjective and supplied by him. The proof as to liability and as to most of the damages comes from the same source and should be evaluated by the same jury.

*Bauman v. Complita,* 66 Wn.2d 496, 502, 403 P.2d 347, 351 (1965) (Hill, J.).

3 W. Barron & A. Holtzoff, Federal Practice and Procedure § 1307 (1958), describes the practice under the parallel federal rule as follows:

> [I]f it is apparent from the record that those as against whom judgment would otherwise be proper might have been injured by reason of the trial having been against all the parties, it is the duty of the court to set aside the verdict as well as the judgment and award a new trial as against those properly retained as defendants in the case.
> . . .

> *The caution is repeatedly stated in the case law that a new trial on less than all the issues is not proper unless the issue to be retried is distinct and separable and the error which has crept into one element of the verdict did not in any way affect the determination of any other issue.* In particular, before ordering a new trial on the issue of damages alone where they are claimed to be inadequate, the court should be sure that the inadequate verdict was not the result of a compromise with jurors who would have preferred to find defendant not liable.

(Italics mine).

This court has the authority to limit issues on retrial in those cases where it clearly appears that the original issues were distinct and separate from each other and that justice does not require resubmission of the whole case to the jury. *Sage v. Northern Pac. Ry.,* 62 Wn.2d 6, 380 P.2d 856 (1963) (damages and liability as between multiple defendants; full retrial); *Shaw v. Browning,* 59 Wn.2d 133, 367 P.2d 17 (1961) (inadequate verdict; misinstruction as to contributory negligence; full retrial); *Zerr v. Spokane City Lines, Inc.,* 58 Wn.2d 196, 361 P.2d 752 (1961) (contributory negligence erroneously taken from jury; full retrial).

Apart from *France v. Peck,* 71 Wn.2d 592, 430 P.2d 513 (1967), the above cases seem to indicate that if plaintiff seeks and recovers general damages based upon subjective evidence of injury, and a retrial is then necessitated by error as to contributory negligence, that both damages and liability must be submitted to the jury on retrial. As the remarks in *France v. Peck, supra,* are *dictum,* we do not view them as modifying the test set out by Justice Hill in *Bauman v. Complita, supra.*[7]

As the majority notes, the evidence of Peggy Poston's

---

[7] The issue of a new trial on all aspects was first suggested to the court during the oral argument of *France v. Peck, supra.* No error was assigned to the proof or the extent of damages, nor was the portion of the record concerning them before the court. Such procedural infirmities are not present in the instant case. The appeal is taken from *all* portions of the judgment; the new trial denial is challenged *in toto;* and the issue is argued in appellant's brief. All testimony relevant to the damages is included in the record.

injury was almost entirely subjective.[8] The difficulty in the instant case arises from the circumstance that any injury involved was suffered by Peggy rather than by her arguably contributorially negligent father. The majority, however, states that "[t]he only conceivable basis for another trial on her behalf on the issue of general damages would be that the jury's award was inadequate." I disagree. This test focuses solely on the award received by Peggy without any consideration of whether that award may have been affected by erroneous instruction. An analysis of whether the jury's award was inadequate would be sufficient if Peggy was the sole plaintiff. But she is not. An examination of the adequacy of the award must take into consideration the likelihood of any effect upon the award by the erroneous instruction.

It is dangerously dubious reasoning to say that, because contributory negligence of the parents was legally irrelevant as to any recovery by the minor child, the amount or size of that recovery could not be affected by erroneous instructions as to contributory negligence on the part of her father.

Both our own and the federal case authority on the new trial issue recognize that the possibility of a compromise verdict is sufficient to require that the new trial be granted as to all issues. *Myers v. Smith*, 51 Wn.2d 700, 321 P.2d 551 (1958); 3 W. Barron & A. Holtzoff, *supra* at § 1307.

A compromise verdict is, in the abstract theory of negligent torts, a logical impossibility. One either is or is not negligent or contributorially negligent with respect to specified actions, persons, and facts. Yet, so long as it is not a quotient verdict, a compromise verdict cannot be impeached. *Oliver v. Taylor*, 119 Wash. 190, 205 P. 746 (1922). Juries are allowed to reach results which are not entirely in accord with the niceties of negligence theory, and the rules which allow them to reach such results are also rules

---

[8]The evidence and testimony relating to the injury suffered by Peggy Poston has been extensively analyzed by the majority. I do not question that, standing alone, the evidence would support a verdict of $500 without unmistakably indicating passion or prejudice.

of law—rules of equal weight and longer standing than those governing negligent torts.

If the jury in fact had used any of several entirely erroneous methods in establishing Peggy Poston's damages, their verdict would be unimpeachable. *See Gardner v. Malone,* 60 Wn.2d 836, 376 P.2d 651 (1962). The rules which surround the verdict of a jury and its review are not fortuities. They express legal policies of substance, protecting an institution guaranteed to the parties by the state constitution. Const. art. 1, § 21. Learned treatises have been written for the purpose of defending the propriety of such jury practices as discounting damages by fault, regardless of the law of contributory negligence. The power of the jury to set general damages is interfered with only if the award is so large or small as "unmistakably to indicate that the verdict must have been the result of passion or prejudice." CR 59.

In short, the law assumes that a jury, properly instructed, will supply to the parties something which the theoretical branches of substantive law are not capable of providing.

The jury in this case was not properly instructed. *It was misinstructed.* The relationships of passenger and driver and child and parent which existed between Peggy Poston and her father establish reason for a commonsense belief and conclusion that the jury could quite likely have indulged in some discounting of her damages in the light of contentions as to her father's negligence, regardless of the nicety of legal theory to the contrary. Despite the attempts of the majority to analyze the subjective evidence of the injury, the verdict which the jury in fact arrived at is not of such a size as to indicate clearly that some discounting was not engaged in.

The rule which we have established hitherto is that a partial new trial may be ordered only when the issues are clearly distinct and separate from each other and justice does not require resubmission of the whole case to the jury. The circumstances of this case, in which arguably a layman would impute negligence although the law does not, lead to

a conclusion that justice requires the submission of the entire case to a new jury which has been properly instructed as to all aspects of the case.

I would set aside the verdict as to Peggy Poston, reverse the judgment in its entirety, and remand the case for a new trial.

HUNTER, C. J., and ROSELLINI, J., concur with FINLEY, J.