[No. 41260.   En Banc.   February 25, 1971.]

MARY ETTA BLACKBURN, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.

PATRICIA WEST, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.*

*Kimball & Clark, Ned W. Kimball*, and *J. P. Tonkoff*, for appellants.

*Murray, Dunham & Waitt*, by *Wayne Murray*, for respondent.

ROSELLINI, J.—The plaintiffs were passengers in an automobile which struck the rear of a road grader being used as a snowplow on a road just outside the city limits of Wenatchee. The accident occurred at night. The road was covered with compact snow and ice, and snow was falling.

The four young occupants of the automobile suffered amnesia as a result of the accident, and none of them testified at the trial of this action. The operator of the snowplow, an employee of the state of Washington, did not observe the automobile before the collision. He was in the process of turning the plow off the highway into a Department of Highways maintenance lot, and had switched his right turn signal on about 150 feet before the snowplow reached the point where the accident took place.

The only witness to the event who testified at the trial

*Reported in 481 P.2d 448.

was a young man who had been driving in the same direction in the inside lane. He testified that he had observed the snowplow's flashing amber signal when he was 600 or more feet behind it. He did not know what it was, but he knew there "was something there." He was traveling at a speed of about 25 miles per hour. As he was approaching the object ahead of him, he observed a Corvair automobile passing him on the right, traveling at a speed at least 15 miles greater than his own. Knowing that there was an object in the outside lane in the path of the Corvair, he became alarmed as he noted that it was not slowing down or turning out of the outside lane.

The witness testified that the Corvair did not slow down or swerve to avoid a collision, and that he saw no evidence that brakes were applied. Instinctively, he said, he applied his own brakes when he saw that a collision between the Corvair and the snowplow was inevitable.

The evidence showed that, at the time of the accident, the snowplow was illuminated by a flashing amber light of 50 candlepower, mounted on the top of its cab, and by seven other lights, including two headlights, the beams of which lighted the sides of the plow.

At the conclusion of the presentation of the plaintiffs' evidence, the trial court granted the defendant's motion to dismiss, finding that there was no prima facie showing that any negligence of the defendant caused the accident.

The plaintiffs' appeal is grounded on the theory that the defendant was required by law to install and have in operation certain lights in addition to those which were admittedly in use at the time of the accident. Specifically, they contend that paragraph 2 of the State Commission on Equipment regulation No. 630, adopting the requirements of RCW 46.37.090, 46.37.100, 46.37.110 and 46.37.120, applies to snowplows and requires that the outside extremities of such equipment be marked by lights and reflectors.

The commission adopted these provisions when, in compliance with RCW 46.37.300, it promulgated its standards and specifications for snow removal equipment. In para-

graph 1 of regulation 630, it provided that a flashing amber light, having a candlepower of at least 21, should be maintained on the top of the cab of each snowplow.

The trial court was of the opinion that the commission intended only to adopt the statutory provisions referred to in paragraph 2 as a part of its regulation and did not intend to make those provisions applicable to snowplows. By their terms, the provisions in question apply to trucks and buses. The court observed that, as a practical matter, it is impossible to mark the "extreme width" of a snowplow with a light or reflector. The blade is the widest part of a snowplow, and a light placed on the blade would be obliterated by snow when the equipment was in use, if indeed it could be installed and maintained at all in such a place.

Furthermore, the court pointed out, the equipment was so well lighted by the 50 candlepower (more than twice the power required by the regulation) flashing amber light and the headlights, directed to the sides of the vehicle, that additional small marker lights and reflector lights would make no significant addition to the visibility of the plow. This surmisal of the judge is supported by the testimony of the one witness to the accident, who did not remember observing the lights on the plow, other than the flashing light, until he was quite close to it.

The court ruled that the lighting on the equipment was in compliance with the regulation and the requirements of statute, and further that the plaintiffs had failed in their burden of making a prima facie showing that defective lighting was a proximate cause of the collision. Since we are of the opinion that the latter holding was entirely justified upon the record, we need not consider the plaintiffs' contention that paragraph 2 of regulation 630 applies to snowplows.

The undisputed evidence showed that the equipment was so well lighted that it was visible from a distance of at least 600 feet behind it. Since the driver of the automobile in which the plaintiffs were passengers did not apply his brakes, slow down, or alter his course but drove squarely

into the rear of the plow, the only conclusion which reasonable minds can reach is that he did not see the plainly visible piece of equipment before the moment of impact. If the driver had attempted to avoid hitting the lighted cab and had collided with the projecting blade of the plow, there might have been some basis for an argument that failure to place marker lights on the blade was a cause of the accident. But no such attempt was made.[1]

Upon the evidence introduced by the plaintiffs, a jury could conclude only that the accident occurred because the driver of the automobile was not keeping a proper lookout ahead. Even assuming the snowplow was not lighted in strict compliance with the regulation, the lights which it displayed were more than adequate to warn an approaching vehicle in time to avoid a collision. This is the only reasonable conclusion to be drawn from the plaintiffs' undisputed evidence.

It is true that the question of proximate cause is ordinarily for the jury, but when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion, the question becomes one for the court. *France v. Peck,* 71 Wn.2d 592, 430 P.2d 513 (1967).

The trial court correctly concluded that the plaintiffs had failed to sustain their burden of showing, prima facie, that negligence of the defendant was a proximate cause of their injuries.

The judgment is affirmed.

ALL CONCUR.

---

[1]Although there was no light on the blade itself, any part of it which projected to the side of the vehicle should have been visible to a driver approaching from the rear, since the headlights were positioned to illuminate it. The blade, incidentally, was located toward the front of the piece of equipment, and the Corvair did not come in contact with it.