[No. 38201.    En Banc.    November 30, 1967.]

CLARENCE ZAHN, *Respondent*, v. JOHN ARBELO *et al.*, *Appellants.**

*Nashem & Prediletto* and *Norman R. Nashem, Jr.*, for appellants.

*Reported in 434 P.2d 570.

*Alan A. McDonald* (of *Halverson, Applegate, McDonald & Weeks*), for respondent.

HILL, J.—This is an action by a favored driver against a disfavored one who failed to yield the right of way.

The favored driver was proceeding south on Elm Street, an arterial; the disfavored driver was traveling east on Third Street. The disfavored driver either ran the stop sign and proceeded across the arterial under modified jet propulsion, or he stopped for the stop sign and then practically crept across the arterial.[1] In either event, the collision occurred near the center of the paved portion (20 feet in width) of the arterial.

The negligence of the disfavored driver in failing to yield the right of way cannot be gainsaid. The sole issue on the appeal is whether the trial court should have submitted the issue of the favored driver's contributory negligence to the jury.

The trial court's view was that if the favored driver was negligent in failing to keep a proper lookout ahead (the only negligence claimed), this negligence did not contribute to the collission, *i.e.*, it was not a proximate cause.

■■ We shall assume, as defendant (disfavored driver) testified, that he stopped for the stop sign and then proceeded slowly past the stop sign into the intersection. But this testimony creates its own dilemma. The favored driver on an arterial protected by a stop sign has one of the strongest rights of way which the law allows. Certainly as strong as the one discussed in *Mondor v. Rhoades,* 63 Wn.2d 159, 385 P. 2d 722 (1963). If the favored driver had seen the disfavored driver proceeding slowly toward the paved portion of Elm Street, the favored driver would have

[1] There seems to be some likelihood of the former in view of the fact the disfavored driver's car continued on out of the intersection across a lawn at the southeast corner of the intersection, and then continued curving across the lawn and back onto Third Street, still facing east and stopped some 70 to 80 feet from the point of impact. However, the jury could have accepted the disfavored driver's explanation of these gyrations.

had every reason to believe that the disfavored driver would stop and yield the right of way, as he was lawfully obligated to do. *Archibald v. Gossard,* 65 Wn.2d 486, 397 P.2d 851 (1965). It was only after the slowly-proceeding, disfavored driver had entered the paved portion of Elm Street, which put him within 11 feet or less of the point of impact, that the favored driver had any reason to believe that the disfavored driver was not going to yield the right of way. The disfavored driver put his speed at 4 to 7 m.p.h. Had it been 4 miles an hour, it would have taken less than two seconds[2] from the time he entered the paved portion of Elm Street to travel the 11 feet to the point of impact.

Had the favored driver had his eyes focused on the disfavored driver at the exact instant it became apparent that the latter was not going to yield the right of way, the favored driver—whether traveling 10, 15, or 20 miles an hour[3]—was then so close to the point of impact that, making allowance for reaction time[4], he could not then have avoided the collision if the disfavored driver continued on his collision course.

To hold that a driver traveling on the paved portion of an arterial cannot rely on his right of way merely because he sees a disfavored driver slowly approaching the paved portion of such arterial, would make a mockery out of our right-of-way rule. We think the trial court was correct in holding, under the situation here presented, that if there was a failure to keep a proper lookout ahead by the plaintiff, it could not have been a proximate cause of the collision.

---

[2]In two seconds, a car traveling 4 miles per hour would cover 11.73 feet.

[3]He was at 20, 15, or 10 miles an hour approximately 60, 45, or 30 feet, respectively, from the point of impact.

[4]". . . When it becomes apparent to the favored driver that the disfavored driver will not yield the right of way, a reasonable reaction time must be alloted the favored driver." *Bellantonio v. Warner,* 47 Wn.2d 550, 553, 288 P.2d 459 (1955). See also *Archibald v. Gossard, supra.*

The judgment is affirmed.

WEAVER, ROSELLINI, HUNTER, and HAMILTON, JJ., and LANGENBACH, J., Pro Tem., concur.

DONWORTH, J. (concurring in the result)—While I am in agreement with the result reached by the majority and with the rules of law which are stated, I am more than somewhat troubled by what seems to be implied in the opinion.

In order to clarify my position, I feel that a more complete statement of the pertinent facts than is made by the majority is necessary.

The collision between appellant and respondent occurred at a point where Elm Street (an arterial protected by stop signs) and Third Street intersect in the town of Grandview, Washington.

A hedge, located on the north side of, and parallel to, Third Street, obstructs the view of a driver proceeding south on Elm, and would prevent him from seeing a vehicle approaching Elm from the west on Third until that vehicle was within about 30 feet of the stop sign.

On the afternoon of Friday, November 22, 1963, respondent, employed by the city of Grandview as a police officer, was proceeding south on Elm in a marked police car. He observed two women in an automobile, traveling very slowly in a southerly direction on Elm directly ahead of his own car. The two women turned across the east lane of Elm and stopped off the pavement headed in the wrong direction. Respondent briefly continued his observation of the women in the rear view mirror "to see what they were going to do." He then looked to the front just in time to see appellant's pickup truck proceeding east on Third Street into the intersection ahead of him. He was unable then to avoid the collision, and the pickup struck the police car on the right rear door.

The actions of appellant, clearly the disfavored driver, are very much in dispute. According to respondent, when he first saw appellant's pickup truck, it was proceeding into

the intersection at a speed of 25-30 miles per hour, having failed to stop at the stop sign on Third.

According to appellant, however, he stopped at the stop sign, looked in both directions, and, seeing no cars approaching for at least 3 or 4 blocks to the north, proceeded across the intersection. He had just shifted into second gear, having attained a speed, according to his "best" estimate, of somewhere between 4 and 8 miles per hour, when respondent's police car struck the front end of his pickup truck with its right rear door.

The sole issue before this court is whether the trial court erred in removing the issue of respondent's contributory negligence from the jury's consideration. The theory on which the trial court's ruling and this court's affirmance of that ruling are based is that, even had respondent been keeping a proper lookout, he could not have avoided the collision.

Respondent's recovery, or the bar to his recovery, therefore, rests on complex calculations relating to the distances an automobile will be considered to have traveled in a given length of time, or the distance in which a moving automobile may be stopped. I cannot agree with this method of deciding these cases.

There is no equivocation in the duties imposed by the legislature upon the disfavored driver at a controlled intersection. See RCW 46.61.190 (2). He *shall* stop, and he *shall* yield the right of way to the favored driver. His failure to comply with these duties renders him negligent as a matter of law, and liable for all damages proximately caused by his wrongful action.

However, since *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533 (1930), this court has effectively imposed certain duties upon the favored driver by declaring that the right of way, given the favored driver by the legislature, was "relative" and not absolute.

From this proposition have come several decisions in which we barred recovery on the part of the favored driver on the ground that he failed to exercise reasonable care for

his own safety, *i.e.* was contributorily negligent. See *Harris v. Fiore,* 70 Wn.2d 357, 423 P.2d 63 (1967); *Owens v. Kuro,* 56 Wn.2d 564, 354 P.2d 696 (1960); *Sebastian v. Rayment,* 42 Wn.2d 108, 254 P.2d 456 (1953).

The majority, in the present case, imply that, had Zahn been able to see the impending violation of his right of way by Arbelo in time to have stopped and avoided the collision, he would have been barred from recovery by his contributory negligence in failing to maintain a proper lookout. With this implication, I disagree. I would overrule cases giving support to such a doctrine.

Such a ruling, it seems to me, abolishes the statutory right of way and reverts to a race-for-the-intersection situation. Under such a rule of law, the disfavored driver, notwithstanding the statutory advantage given the favored driver, may, with impunity, proceed into the path of the oncoming favored driver so long as the favored driver should be able to stop in time, or otherwise avoid a collision. No such rule was contemplated by the legislature, and no such rule should be followed by this court.

I would abandon rules of "relative" rights of way which have developed from *Martin v. Hadenfeldt, supra,* and, instead, bar recovery by the favored driver in only two circumstances; *i.e.* the true deception situation as described in *Mondor v. Rhoades,* 63 Wn.2d 159, 167, 385 P.2d 722 (1963), where the actions of the favored driver "deceive the reasonably prudent driver on the left to such an extent as to entrap him"; and in cases involving last clear chance. See *Barrett v. Inglin,* 46 Wn.2d 317, 281 P.2d 236 (1955), and cases cited therein.

By such a ruling, this court would give substance to the rule, stated in the majority opinion, that "The favored driver on an arterial protected by a stop sign has one of the strongest rights of way which the law allows," and would return these right-of-way cases to their proper perspective.

For the reasons stated above, I concur in the result of the majority opinion.

HALE, J. concurs with DONWORTH, J.

FINLEY, C. J. (dissenting)—I must dissent from the majority and concurring opinions for several reasons. First, I agree with the concurring opinion that the majority's recitation of the facts seems somewhat skimpy. Second, the majority's interpretation of the selected facts seems to me to be untenable. Third, the majority and concurring judges seek to introduce into the kaleidoscopic intersection-automobile-collision cases new rules or standards which, in my judgment, are contrary to our prior decisions. Fourth, the majority's apparent quest for a panacea to yield absolute certainty and ease of decision in intersection-automobile-collision cases is illusory. Fifth, such a quest places an unrealistic reliance upon mechanical jurisprudence or formulations not likely to produce either certainty or ease of decision, but rather likely to result in harsh, unjust, and perhaps illogical disposition of intersection cases when they are viewed in terms of everyday notions of fair play, blameworthiness, and right and wrong, which underlie tort law concepts of negligence and contributory negligence.

## I. CONSTRUCTION OF THE FACTS FOR
## A DIRECTED VERDICT.

The single issue before this court is whether the plaintiff was, as a matter of law, free of contributory negligence. If he was not, then the trial judge erred in granting plaintiff's motion for a directed verdict on this issue.

To avoid being contributorily negligent, plaintiff was required to exercise the same general standard of care the law uniformly requires when determining the existence, or nonexistence, of negligence. He was required to act as a reasonably prudent man would act under the same or similar circumstances. *Bauman v. Complita,* 66 Wn.2d 496, 403 P.2d 347 (1965); W. Prosser, Torts §§ 36, 64 (3d ed. 1964). One of the circumstances usually pertinent in intersection collision cases is whether a particular driver had the right of way and, consequently, was the "favored dri-

ver." *Massengale v. Svangren,* 41 Wn.2d 758, 252 P.2d 317 (1953). The law accords a favored driver, *i.e.,* the plaintiff in the instant case, considerable protection or a degree of immunity from liability for damages, regardless of the actions of others, unless he knew, or in the exercise of due care should have known, that a disfavored driver was not going to yield the right of way. *Owens v. Kuro,* 56 Wn.2d 564, 354 P.2d 696 (1960); *Bellantonio v. Warner,* 47 Wn.2d 550, 288 P.2d 459 (1955). Obviously the purpose of this exception is to withhold protection or immunity from liability even as to favored drivers whose conduct creates an unreasonable risk of harm to themselves or others.

The issue of contributory negligence generally is for the jury to determine. *See Mathers v. Stephens,* 22 Wn.2d 364, 156 P.2d 227 (1945). This court has said on numerous occasions that only in rare cases is a trial court justified in withdrawing this issue from the jury. *E.g., Bauman v. Complita, supra; Baxter v. Greyhound Corp.,* 65 Wn.2d 421, 397 P.2d 857 (1964). However, the majority holds in the instant case that the trial judge was correct in removing the issue of plaintiff's contributory negligence from the jury's determination. I cannot agree.

When passing on the correctness of granting a motion for a directed verdict on the issue of contributory negligence, certain rules must be followed. The evidence must be interpreted most favorably to the nonmoving party, defendant here, and no discretion may be exercised as to whether the evidence of contributory negligence was sufficient to take the issue to the jury. *Hansen v. Pauley,* 67 Wn.2d 345, 407 P.2d 811 (1965); Trautman, *Motions Testing the Sufficiency of Evidence,* 42 Wash. L. Rev. 787, 797 (1967). The evidence which is most favorable to the nonmoving party must be considered even if it was not introduced by him. This court must review *all* the evidence to find the portions which are most favorable. *Wold v. Jones,* 60 Wn.2d 327, 373 P.2d 805 (1962). Under these standards, I am convinced the result reached by the majority is untenable.

The majority construe the evidence or facts to be as presented by the defendant, *i.e.*, that defendant stopped at the intersection and then "practically crept across the arterial" at between 4 and 7 miles per hour. This construction is *not* the one most *favorable* to defendant *on the issue of plaintiff's contributory negligence*. The most favorable construction would seem to be to adopt the view asserted by plaintiff in his deposition and by the investigating officer that plaintiff was proceeding along Elm Street at 10 miles per hour and that defendant ran the stop sign at 30 miles per hour. At 10 miles per hour, plaintiff could have stopped almost instantly. If he had been paying attention to the road ahead, it is arguable plaintiff would have seen defendant rapidly approaching the intersection. If so, he should have concluded, as a reasonably prudent man would have, that defendant would fail to yield the right of way. The fact that plaintiff may not have been looking will not save him. He is charged with seeing what was there to be seen. *Owens v. Kuro, supra,* at 572, 354 P.2d at 701.

Whether this construction of the facts is the most logical or probable one for a jury to reach is unimportant for our purposes in the instant matter. What is important is that proper selection of facts will reveal substantial evidence from which a jury could conclude that plaintiff was contributorily negligent. This being the case, the motion for a directed verdict on this issue should not have been granted. *See Golub v. Mantopoli,* 65 Wn.2d 361, 397 P.2d 433 (1964).

If we assume, as does the majority, that defendant was traveling at between 4 and 7 miles per hour, and plaintiff was traveling at 10 miles per hour, it still does not seem possible to conclude as a matter of law that plaintiff was not contributorily negligent. In footnotes two and three, the majority sets out a computation of the distance defendant and plaintiff traveled after defendant reached the edge of the pavement on Elm Street until the collision. Defendant had by then reached a point at which the majority concludes that plaintiff should have been warned of the danger of collision. Even if we accept as uncontrovertible the as-

sertion that plaintiff could justifiably rely on his status as favored driver up to that point,[5] under the majority's computations as to stopping distances we find that while defendant was traveling the 11 feet from the edge of the pavement to the point of collision, plaintiff, at 10 miles per hour, was traveling 30 feet.

The Bendix scale of tested stopping distances, accepted as authoritative in 9C Blashfield, Cyclopedia of Automobile Law & Practice § 6237, at 413 (perm. ed. 1954), indicates that a car under ordinary conditions can stop in 15.5 feet at a speed of 10 miles per hour. This distance allows for an average reaction time of three-fourth seconds, during which time the car travels 11 feet, plus 4.5 feet of required braking distance.

Considering the elements of time and distance and the fact that the accident occurred on a dry, paved surface in midafternoon on a day when visibility was excellent, it is indeed difficult to understand why plaintiff traveled nearly *twice* the distance necessary to stop after he was put on notice that defendant was not going to yield the right of way, unless we conclude that plaintiff was contributorily negligent. It is even more difficult to hypothesize why no jury question is presented.

## II. Contributory Negligence Of
### Favored Drivers

The foregoing discussion and conclusions are largely predicated upon the assumption that this court is still following its established rules concerning the standard of care which a favored driver must meet. Since deciding the case of *Mondor v. Rhoades*, 63 Wn.2d 159, 385 P.2d 722 (1963), this court has held that a *disfavored* driver who fails to yield the right of way is negligent as a matter of law unless he is deceived by the actions of the favored driver. *Accord, Archibald v. Gossard*, 65 Wn.2d 486, 397 P.2d 851 (1965).

---

[5]The validity of this assertion is discussed in Part II of this opinion *infra*.

On the other hand, we have held that a *favored* driver is negligent if he fails to exercise the care a reasonably prudent man would exercise under the same or similar circumstances. *Bauman v. Complita, supra,* at 498, 403 P.2d at 348-49. *See Tobias v. Rainwater,* 71 Wn.2d 845, 431 P.2d 156 (1967).

It is clear, however, that at least the concurring opinion written by Donworth, J., and signed by Hale, J., departs from these rules by extending the rule of *Mondor v. Rhoades, supra,* to make a disfavored driver not only negligent but *liable* if he fails to yield the right of way. This is apparent from the following statement in the concurring opinion:

> There is no equivocation in the duties imposed by the legislature upon the disfavored driver at a controlled intersection. . . . His failure to comply with these duties renders him negligent as a matter of law, and *liable* for all damages proximately caused by his wrongful action. (Italics mine.)

Unless a favored driver is deceptive in his actions (which is *not* the same thing as being negligent),[6] or fails to exercise a last clear chance of avoiding an accident, the concurring judges would hold the disfavored driver liable, *regardless of the favored driver's negligence.* I simply must disagree with this position.

In *Mondor v. Rhoades, supra,* this court explicitly stated that absolute liability will not be imposed on a disfavored driver in an intersection collision without legislative sanction. *See also Bennett v. Karnowsky,* 24 Wn.2d 487, 166 P.2d 192 (1946). Yet, in effect, this is now proposed by the

---

[6]The deception doctrine was first stated in *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533 (1930), and includes two elements: a negligent act by a favored driver which creates a deceptive situation, and reliance on the deceptive quality of the act by a disfavored driver. I must confess that the rationale behind the requirement that a deceptive act must be the result of a favored driver's negligence before a disfavored driver is exculpated escapes me. It seems to me that it is enough if the acts of a favored driver do in fact deceive disfavored driver, regardless of whether they stem from the favored driver's negligence.

concurring opinion. It would remove the element of a favored driver's negligence from intersection-collision cases altogether. This is contrary to every Washington decision which has considered the issue. *E.g., Harris v. Fiore,* 70 Wn.2d 357, 423 P.2d 63 (1967); *Ward v. Zeugner,* 64 Wn.2d 570, 392 P.2d 811 (1964). It would be both illogical and dangerous to adopt a rule that, if no last clear chance is available, a favored driver, *regardless of his negligence,* may *recover* from a disfavored driver whenever the disfavored driver is undeceived and fails to yield the right of way.

I agree with the concurring judges that the rule of *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533 (1930),[7] may not provide adequate protection for favored drivers unless their favored status is emphasized. Nonetheless, I do not believe a solution to this problem lies in crystallization of a rule which practically guarantees their recovery. In the first place, such a rule would inflict too much hardship on disfavored drivers. In the second place, it is always dangerous to attempt to establish a fixed and mechanistic standard of conduct which is to be applied in every case arising within a given category, such as intersection collisions. As pointed out by Dean Prosser, whenever such a standard has been established it "almost invariably . . . has broken down in the face of the obvious necessity of basing the standard upon the particular circumstances, the apparent risk and the actor's opportunity to deal with it." W. Prosser, Torts § 37, at 210 (3d ed. 1964).

Despite views and efforts of the concurring judges, contributory negligence still should be a factor when deciding whether a favored driver may recover from a disfavored driver. However, the likelihood of finding contributory negligence in any given case has been sharply decreased be-

---

[7]The rule contains four elements: (1) All rights of way are relative; (2) the primary duty of avoiding a collision is on the driver on the left; and (3) a collision within an intersection means the cars were "simultaneously" approaching, unless (4) the disfavored driver was deceived. See note 6 *supra.*

cause of additional preferment extended to favored drivers by the majority.

As pointed out previously, contributory negligence of favored drivers has traditionally been measured by the reasonably prudent man test. *Bauman v. Complita,* 66 Wn.2d 496, 403 P.2d 347 (1965). *See Robison v. Simard,* 57 Wn.2d 850, 360 P.2d 153 (1961). Under this test, one element to be considered is the right of way of favored drivers. This test does not, however, regulate the weight to be placed upon, or degree of importance of, this right of way. We have used an additional rule for this. In the instant case, the majority has radically departed from what has heretofore been the rule of this court as to the importance of favored driver status in cases in which a favored driver, who has not been looking for traffic ahead, seeks to rely on his favored position after colliding with a disfavored driver.

The earlier rule, briefly stated, is that a favored driver who does not look for approaching traffic may not be heard to say that he assumed disfavored drivers would yield to his right of way. In *Owens v. Kuro,* 56 Wn.2d 564, 572, 354 P.2d 696, 701 (1960), we stated:

> Appellants urge, however, they had a right to rely on the fact that, since the light had turned amber, any oncoming vehicle would not proceed through the end of an amber light. Such contention would be meritorious *had appellant driver seen the car approaching* and from its actions reasonably relied upon it to stop. *But the facts are not so.* Appellant driver did not see the oncoming car, and therefore, could not have relied upon it to stop. *One cannot merely depend on another's obeying a traffic signal without observing the situation.* (Italics mine.)

In *Owens,* we also quoted with approval, at 573 n.5, 354 P.2d at 701 n.4, the following passage from 2 Blashfield, Cyclopedia of Automobile Law & Practice § 1028, at 303 (perm. ed. 1951):

> The rule that a motorist has a right to assume that other users of the highway will not drive negligently and will obey stop signs applies *only* in favor of those whose conduct measures up to a standard of due care. *If a*

*driver does not notice a motorist approaching an inter-section from the left, he cannot assert that he thought the motorist from the left would give him the right of way.* (Italics mine.)

It would appear that it is the intention of the majority to now overrule *sub silentio* the rule of *Owens v. Kuro.* Even though plaintiff, by his own statements, established that he did not look for approaching traffic until an instant before the accident, the majority takes the position that plaintiff had a right to assume that others, including defendant, would yield the right of way.

It may be that the rule in *Owens* is too denigrating as to the right of way of favored drivers to be permitted to stand. If so, it should be expressly overruled. No good purpose is served by leaving in effect at the same time two contrary and irreconcilable rules of law. This is particularly pertinent because the rule adopted in *Owens* has been recently cited with approval by this court. *Tobias v. Rainwater,* 71 Wn.2d 845, 431 P.2d 156 (1967); *Bauman v. Complita, supra.*

It seems important to note parenthetically what to me is the basis upon which the majority and concurring judges formulated their decision concerning the weight to be placed on the status of favored drivers. In *Mondor v. Rhoades,* 63 Wn.2d 159, 385 P.2d 722 (1963), we recognized that a favored driver's right of way is not absolute. Consequently, the majority could not adopt such a rule in the instant case without overruling *Mondor.* On the other hand, it is clear the majority are not satisfied with the status of favored drivers under the *Owens v. Kuro* rule, and indeed wish to make a favored driver's right of way *as strong as possible.* As a result of the conflict between the desires of the majority and the limits of *Mondor,* this court seems to have now adopted a rule which states that the right of way of favored drivers is *absolute except* when one or two particularized circumstances are present (deception and last clear chance). In short, we seem to be saying that the right of way is "almost" absolute.

Some examples may serve to illustrate my point. The majority opinion states:

> The favored driver on an arterial protected by a stop sign has *one of the strongest rights of way which the law allows.* Certainly as strong as the one discussed in *Mondor v. Rhoades* . . . . (Italics mine.)

Regarding the reference to *Mondor* by the majority, we there said, at 63 Wn.2d at 167, 385 P.2d at 727, that the principal reason we did not make a favored driver's right of way absolute in an uncontrolled intersection was that

> [r]oom must be left for the *extreme case,* the case where the driver on the left is able to demonstrate that the favored driver *so wrongfully and negligently* operated his car as to create a deception *tantamount to an entrapment* . . . . (Italics mine.)

The concurring opinion in the instant case is even more direct when it says

> I *would abandon rules of "relative" rights of way* which have developed from *Martin v. Hadenfeldt, supra,* and, instead, bar recovery by the favored driver in only two circumstances; [deception and last clear chance] . . . . (Italics mine.)

I, too, wish to see a favored driver's right of way given substantial protection. My quarrel is with the way in which this court has framed the rule protecting this right. A rule which focuses attention on the absoluteness of a right which is not absolute necessarily presents conceptual difficulties. Either a right is absolute or it is not absolute; it cannot be "almost" absolute any more than an individual can be "almost" married. If a right is not absolute, then in fact it is really relative.

If a majority of the members of this court wish to make a favored driver's right of way absolute, they should say so and overrule *Mondor v. Rhoades, supra.* If they do not, they should recognize explicitly that the right of way is relative and phrase the opinion governing this right in terms which reflect its relativity. Judging from the phrases quoted above, I do not believe this has been done.

One final point must be mentioned. In the majority opinion, the statement is made, as mentioned above, that "[t]he favored driver on an arterial protected by a stop sign has one of the strongest rights of way which the law allows." Two distinct meanings may be attached to this sentence. First, this sentence may mean that, in exercising due care under the circumstances, a favored driver has a right to rely heavily on his right of way. Second, it may mean that a favored driver need not exercise ordinary care under the circumstances but in fact may exercise less than ordinary care. The distinction between the two is that the former construction reflects an application of the normal rule used to determine the existence of negligence, namely, the reasonably prudent man rule (although, as I have said, the application seems to be phrased in a manner which fails to accurately reflect the relativity of the right of way), while the latter construction implies that a special rule has been created for favored drivers, one not tied to the reasonably prudent man rule. If the second interpretation is correct, then I also must dissent from this aspect of the majority opinion.

Creation of special rules to govern the basic standard of care in particular classes of cases is contrary to a fundamental tenet of this court. We have consistently adhered to the view that there is but one standard of care which individuals are required to exercise, that of a reasonably prudent man under the same or similar circumstances. *Anderson v. Beagle,* 71 Wn.2d 641, 430 P.2d 539 (1967); *Ulve v. Raymond,* 51 Wn.2d 241, 317 P.2d 908 (1957).

The reason for this view is obvious. Creation of different standards of care for different situations would ultimately lead to a chaotic overabundance of rules. Furthermore, and this is crucial in the instant case, additional rules are unnecessary to fully protect the rights of favored drivers. The reasonable man test by definition considers the circumstances under which an individual acts, and a favored driver is more than adequately protected *if his right to rely on his right of way is stressed as a surrounding circumstance.*

652

*Cf. Huber v. Hemrich Brewing Co.*, 188 Wash. 235, 62 P.2d 451 (1936).

I am firmly convinced that by limiting ourselves to a general test—that of a reasonably prudent man—this court could retain the flexibility necessary to sit in judgment in future intersection-collision cases. As Mr. Justice Cardozo so aptly phrased it, "Extraordinary situations may not wisely or fairly be subjected to tests or regulations that are fitting for the commonplace or normal." *Pokora v. Wabash Ry.*, 292 U.S. 98, 105, 91 A.L.R. 1049 (1934). Until we are better able to predict the course of future litigation, establishment of rigid and special rules seems improvident at best.

With these principles in mind, and for the reasons stated, I dissent.

