[No. 1056-3.    Division Three.    March 11, 1975.]

EUGENE V. MERRICK et al., Appellants, v. ED G. STANSBURY et al., Respondents.

Clement F. Yuse, for appellants.

Frank Hayes Johnson and Randall L. Stamper (of Mac-Gillivray, Jones, Clarke, Schiffner & Johnson), for respondents.

GREEN, J.—Plaintiff, Eugene V. Merrick, sustained per-

sonal injuries when a bicycle he was riding collided with a truck owned by defendant, City of Spokane, and driven by its employee, defendant Ed Stansbury. Plaintiffs brought this action against the defendants to recover damages, claiming that Stansbury was negligent in failing to yield the right-of-way. Defendants affirmatively alleged that plaintiff was contributorially negligent in failing to maintain a proper lookout. Following a trial to the court, both parties were found negligent and plaintiffs' complaint was dismissed. This appeal followed.

The sole question presented is whether the trial court erred in its determination that Eugene Merrick was contributorially negligent.

On May 30, 1972, Merrick was riding his bicycle west on Mission Avenue toward Normandie Street in Spokane. Stansbury was driving a city truck north on Normandie toward its intersection with Mission. Normandie is a stop street marked by a stop sign; Mission Avenue is an arterial. About 170 feet east of Normandie, Mission slopes downhill in a westerly direction towards Normandie. Merrick testified that as he began to descend, he observed defendant's truck stopped at the stop sign at Normandie and Mission. He took his eyes off the truck for 4 to 7 seconds, estimating his speed at between 15 and 25 miles per hour, and next observed the defendant's truck crossing Mission about 15 feet in front of him. He described what happened.

A Well, I didn't want to hit his tires, because I would get really mixed up; I couldn't go on the other side of him because I wouldn't have time around on the left-hand side because he wasn't far enough to the other lane; so, I chose to go — try to swerve north, trying to miss him, and I ran straight into his side.

. . .

Q . . . And, where in the street did the collision occur?

A . . . pretty close in the middle of where Mission and Normandie on the north side meet.

. . .

Q What part of the truck did you collide with?

A I'm not sure, but I think it was in the middle.

On the question of maintaining a lookout, Merrick testified on cross-examination:

Q In other words, you took your eyes off the truck after you first saw it, and then when you next looked at the truck, it was right in front of you, right?

A That's right.

Stansbury testified that he traveled north on Normandie and stopped at the stop sign at Mission Avenue, looked to his left and to his right "because it's a very hard place to get out of, and I had no vehicle movement either way, and I proceeded." He continued north across Mission and:

A Well, as I got across Mission on Normandie, I heard this scream. I heard no impact, nothing; I heard this screaming, so I immediately stopped and got out, and Mr. Merrick was around on that side of the truck.

Stansbury stated that the accident occurred about 7:30 a.m. on a clear day; however, he acknowledged that he was looking straight into the sun as he looked to his right on Mission. He also testified that the right rearview mirror sticks out and creates a "dead spot in the truck" thus obstructing his view. His view was further obstructed by dirt on the windshield.

Don Burger, a city employee, was stopped immediately behind Stansbury at Mission and Normandie. As Stansbury started across the intersection, Burger looked to his right and saw Merrick's bicycle about a quarter of the way down the hill and Merrick appeared to be looking straight ahead although he acknowledged that on that type of bicycle one does not sit in an upright position. Burger had no difficulty seeing the bicycle and did not notice the sun being in his eyes.

Based on these facts, the trial court found defendant negligent in failing to yield the right-of-way but concluded that plaintiff was contributorily negligent in failing to maintain a proper lookout.[1]

---

[1] Finding of fact No. 3 reads:

"Plaintiff, EUGENE V. MERRICK, first observed the truck driven by

Bicycles traveling upon the public highways are subject to the rules of the road. RCW 46.61.755.

The general rule governing traffic at intersections is stated in RCW 46.61.180:

> The driver of a vehicle approaching an intersection shall look out for and yield the right of way to any vehicle on his right simultaneously approaching the intersection regardless of which vehicle first reaches and enters the intersection.
>
> The right of way rule declared in this section is modified at arterial highways and . . .

This right of the "favored driver" is not absolute. Rather,

> (1) All rights of way are relative, and the duty to avoid accidents or collisions at street intersections rests upon both drivers.

*Martin v. Hadenfeldt*, 157 Wash. 563, 567, 289 P. 533 (1930). With respect to the favored driver's duty to maintain a proper lookout, the "relative" rule is applied as follows:

> Every driver has the right to assume that other users of the highway will obey the traffic laws and rules of the road. Accordingly, we have frequently held that a favored driver who has done nothing to confuse or deceive a disfavored driver is entitled to assume that the latter will yield the right of way. . . . *The favored driver may rely upon this assumption until he becomes aware, or in the exercise of reasonable care should have become aware, that the right of way will not be yielded.*

defendant stopped at SE corner of Normandie and Mission while plaintiff was approximately 170 feet east of the east curb line of Normandie. Plaintiff next observed the truck when he was approximately only 15 feet away from it and traveling at a speed of between 15 and 25 mph., when it was too late to avoid a collision. The distance that plaintiff traveled between first observing the truck and the point of impact took approximately four to seven seconds to traverse and during that time and distance plaintiff failed to watch where he was going, failed to observe the truck that was plainly visible in front of him and failed to take proper precautions for his own safety. The point of impact was at or near the north curb line of Mission at its intersection with Normandie Street and the Court finds that the truck had virtually crossed the intersection in a northerly direction when the collision took place. The bicycle operated by plaintiff struck the right side of the truck. The weather was clear, sunny and the streets were dry and visibility was perfect."

(Citations omitted. Italics ours.) *Massengale v. Svangren,* 41 Wn.2d 758, 760, 252 P.2d 317 (1953); *Owens v. Kuro,* 56 Wn.2d 564, 354 P.2d 696 (1960). At the exact instant when the favored driver sees or should see that the disfavored driver will not yield the right-of-way, "a reasonable reaction time must be allotted" the favored driver to avoid a collision. *Bellantonio v. Warner,* 47 Wn.2d 550, 553, 288 P.2d 459 (1955).

As to arterial or controlled intersections, the code contains modifications of the general rule. RCW 46.61.190(2) provides that:

> [E]very driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop . . . and after having stopped shall yield the right of way to any vehicle . . . which is approaching so closely on said highway as to constitute an immediate hazard during the time when such driver is moving across or within the intersection.

and under RCW 46.61.195:

> The operator of any vehicle entering upon any arterial highway from any other public highway or private way shall come to a complete stop before entering such arterial highway when stop signs are erected as provided by law.

■ Because of these modifications, the "relative" rule pronounced in *Martin v. Hadenfeldt, supra,* has not been strictly applied to controlled intersections. In this respect, the court in *Wilson v. Stone,* 71 Wn.2d 799, 805, 431 P.2d 209 (1967), said:

> The rules governing traffic upon arterial highways must differ from the established rules concerning vehicles simultaneously approaching an uncontrolled street intersection on streets other than arterial highways. To strictly apply the *Hadenfeldt* rule (*Martin v. Hadenfelt* [*sic*], 157 Wash. 563, 289 Pac. 533 (1939)) to persons traveling on an arterial highway would defeat the legislative purpose of creating an arterial highway to facilitate the movement of traffic.

Reinforcing this observation in *Zahn v. Arbelo*, 72 Wn.2d 636, 637, 434 P.2d 570 (1967), the court said:

> The favored driver on an arterial protected by a stop sign has one of the strongest rights of way which the law allows.

It is the application of these principles that compels reversal.

In the instant case, plaintiff was proceeding on his bicycle at a lawful rate of speed on an arterial, approaching an intersection controlled by a stop sign. As he approached the intersection, plaintiff saw the defendant driver stopped at the stop sign in conformance with the law. Relying upon this driver's continued obedience to the law, plaintiff diverted his attention from defendant's truck and when he looked again the truck was in front of him—blocking his lane of travel. The trial court held that if plaintiff had maintained a continuous lookout ahead, he would have discovered defendant's subsequent movement of the truck and avoided the collision.

We believe this view places an undue burden upon a favored driver who *actually sees* a disfavored driver lawfully stopped at a stop sign. In that circumstance, the favored driver has a right to assume that the disfavored driver will not undertake to cross in front of him and is not required to anticipate that the disfavored driver will enter the intersection in violation of the stop sign. *West Coast Transp. Co. v. Landin*, 187 Wash. 556, 559, 60 P.2d 704 (1936). In *Zahn v. Arbelo, supra* at page 637, the court applied this rule to a moving disfavored driver, saying:

> If the favored driver had seen the disfavored driver proceeding slowly toward the paved portion of Elm Street, the favored driver would have had every reason to believe that the disfavored driver would stop and yield the right of way, as he was lawfully obligated to do.

Here, plaintiff, the favored driver, *actually saw* defendant disfavored driver *stopped* at a stop sign. Paraphrasing the language in *Zahn*, plaintiff had every reason to believe that defendant, the disfavored driver, would continue yielding

the right-of-way, as he was lawfully obligated to do. Accordingly, the court's further observation in *Zahn v. Arbelo, supra* at page 638, is even more appropriate in this case:

> To hold that a driver traveling on the paved portion of an arterial cannot rely on his right of way merely because he sees a disfavored driver slowly approaching the paved portion of such arterial, would make a mockery out of our right-of-way rule.

Our holding in this case is restricted to the situation where the favored driver on an arterial actually sees the disfavored driver lawfully obeying a stop sign, or as in *Zahn v. Arbelo, supra*, where he sees the disfavored driver proceeding so slowly toward a stop sign that the favored driver has a right to assume that the disfavored driver is about to stop. In such cases, the favored driver has the right to rely on this assumption until such time as he *actually sees* (not "should have seen") that the disfavored driver is not going to yield the right-of-way. At that instant, the favored driver is, of course, allotted a reasonable reaction time. Accord, *Bellantonio v. Warner, supra.* Such a standard recognizes the strong right-of-way accorded the favored driver at a controlled intersection.

Reversed and remanded for determination of the amount of plaintiff's damages.

McINTURFF, C.J., and MUNSON, J., concur.