[No. 3676–1.   Division One.   March 14, 1977.]

GENE BOYLE, *Appellant,* v. PAUL G. EMERSON, *Respondent.*

*Bianchi, Tobin & Rinaldi* and *Gordon R. Tobin,* for appellant.

*Keller, Rohrback, Waldo & Hiscock, Burton C. Waldo,* and *Glen P. Garrison,* for respondent.

CALLOW, J.—This is an action for damages for personal injuries suffered as a result of a collision between an automobile and a motorcycle escorting a funeral procession.

The plaintiff, Gene Boyle, was employed by a private escort service as a full–time motorcycle escort driver. On October 11, 1973, the plaintiff and an off–duty police officer were escorting a funeral procession. The afternoon was dark and drizzly, and cars other than those in the procession had their headlights on. The plaintiff was wearing a yellow rain jacket and had the state–approved red lights on his

motorcycle flashing. He was proceeding north on 19th Avenue East on the left–hand side of the procession. The procession was separated into two groups, with a gap in the middle. The defendant, not intending to participate in the funeral procession, made a right turn onto the northbound lanes of the arterial after the hearse and accompanying cars in the first group passed him. No motorcycle escort appeared at the intersection to block traffic prior to the defendant's unknowing intrusion into the funeral procession. The defendant had his lights on due to the inclement weather.

After proceeding less than a block behind the first group of cars at a speed of approximately 15 m.p.h., the defendant turned on his left turn signal in preparation to turn out of the procession line. At the same time, the plaintiff on his motorcycle was proceeding north with red lights flashing at approximately 30 m.p.h. about 2 feet to the left of the cars in the procession. The plaintiff had just shifted from second to third gear when the defendant pulled out of the line and crossed the center line of his lane at the intersection of 19th Avenue East and East Highland Drive. The plaintiff was unable to stop the motorcycle in time to prevent a collision.

The plaintiff brought this action to recover for personal injuries. The jury returned a verdict in favor of the plaintiff, which was reduced in the judgment by 40 percent in accordance with the jury's finding of contributory negligence. The plaintiff's motion for new trial or for judgment notwithstanding the verdict was denied. He appeals.

The issues presented on appeal are:

1. Was the escort motorcycle an authorized emergency vehicle?

2. Must a driver of an authorized emergency vehicle maintain a lookout and exercise reasonable care under the circumstances?

3. Was there sufficient evidence to send the issue of contributory negligence to the jury?

4. Were the instructions correct and sufficient to allow each side to argue his theory of the case?

### I. AUTHORIZED EMERGENCY VEHICLE

A. *Definition.*

■ The court instructed the jury that the motorcycle was an authorized emergency vehicle and was being so operated at the time of the accident. An authorized emergency vehicle is described in RCW 46.04.040 as

> any vehicle of any fire department, police department, sheriff's office, coroner, prosecuting attorney, Washington state patrol, ambulance service, public or private, which need not be classified, registered or authorized by the state commission on equipment, or any other vehicle authorized in writing by the state commission on equipment.

An authorized emergency vehicle may be distinguished from other vehicles on the state's highways by its being equipped with "at least one lamp capable of displaying a red light visible from at least five hundred feet . . ." RCW 46.37.190. The state commission on equipment is statutorily authorized to promulgate rules and regulations relating to authorized emergency vehicles, and the owner of such a vehicle is required to have this commission "test and approve sirens and emergency vehicle lamps to be used on such vehicles." RCW 46.37.194. The evidence shows that while the escort service had not registered or obtained specific written authorization from the state commission on equipment pursuant to RCW 46.04.040 with regard to the escort motorcycle involved here, the state commission had tested and approved the flashing red lights pursuant to RCW 46.37.194. The escort service's compliance with RCW 46.37.194 was sufficient to allow the trial court to state that the escort motorcycle was "de facto" an emergency vehicle. *Smith v. Ashmore,* 68 Wn.2d 473, 413 P.2d 651 (1966), does not require a contrary result. In *Smith v. Ashmore* there was no escort in the funeral procession involved, and the court expressly limited the decision to the particular fact situation stating at pages 475–76:

Problems which may arise from accidents happening when the funeral procession *has* a civil police escort are not before us in the instant case.

The evidence supports the ruling that the motorcycle was equipped and operating as a de facto emergency vehicle. The instruction was beneficial to the plaintiff in any event.

B. *Right–of–way Privileges*.

An authorized emergency vehicle is given highway right–of–way driving privileges by statute. The defendant contends that it is the operation, and not the fact that specialized equipment has been specifically authorized for the particular vehicle, that makes it an authorized emergency vehicle. However, RCW 46.04.040 does not base the classification of an authorized emergency vehicle as being dependent upon the function in which it is involved, or whether certain equipment was used in the performance of its function. A vehicle is an authorized emergency vehicle if it is so described in the statutes or if the state commission on equipment, by its approval of equipment and/or written authorization, so designates it. Inquiries into whether certain equipment was functioning or what activity the vehicle was involved in goes to the question of the highway driving privileges available to the operator of the authorized emergency vehicle, and not to whether the vehicle was or was not an authorized emergency vehicle.

RCW 46.37.190 sets out the requirements for lights and other emergency equipment and states: "The use of the signal equipment described herein shall impose upon drivers of other vehicles the obligation to yield right of way and stop . . ."

RCW 46.37.380 sets out requirements for audible warning devices. The statute distinguishes authorized emergency vehicles from other vehicles by its allowance of louder warning devices, but limits their use to situations where the authorized emergency vehicle

is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law, in which said latter events the driver of such

vehicle shall sound said siren when reasonably necessary to warn pedestrians and other drivers of the approach thereof.

RCW 46.37.380(4). When these emergency situations occur, special highway privileges inure to the authorized emergency vehicle operator:

(2) The driver of an authorized emergency vehicle may:
(a) Park or stand, irrespective of the provisions of this chapter;
(b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;
(c) Exceed the maximum speed limits so long as he does not endanger life or property;
(d) Disregard regulations governing direction of movement or turning in specified directions.

RCW 46.61.035(2). These expanded right–of–way privileges are expressly limited, however, and are available to an authorized emergency vehicle only in the specified circumstances, and

only when such vehicle is making use of visual signals meeting the requirements of RCW 46.37.190, except that: (a) An authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red light visible from in front of the vehicle; (b) authorized emergency vehicles shall use audible signals when necessary to warn others of the emergency nature of the situation but in no case shall they be required to use audible signals while parked or standing.

RCW 46.61.035(3).

When emergency situations do occur, not only are the right–of–way privileges of an authorized emergency vehicle operator statutorily expanded, but additional duties are placed on all other drivers in the area whenever the authorized emergency vehicle makes use of its "audible and visual" warning devices. *See* RCW 46.61.210(1). This statute, RCW 46.61.210, requires the operators of all other vehicles to be on the alert, and to immediately yield the right–of–way by driving

to a position parallel to, and as close as possible to, the right–hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

Emergency situations usually are recognizable when they arise, but there is no precise definition of an "emergency call." The only direct statutory attempt to delineate an "emergency call" is found in RCW 46.61.035, which excludes "returning from a fire alarm." Whether a situation will involve an "emergency call," then, is a factual question dependent on the circumstances. *See Skroh v. Newby*, 237 So. 2d 548 (Fla. App. 1970) (deputy sheriff drag racing *not* an emergency); *Mierlak v. Pizzo*, 9 Ill. App. 3d 504, 292 N.E.2d 475 (1972) (officer drove off road to avoid water on street *not* an emergency); *Meeker v. Allstate Ins. Co.*, 209 So. 2d 56 (La. App. 1968) ("nothing rushing" about mission of officer held to be *not* an emergency); *Agnew v. Porter*, 23 Ohio St. 2d 18, 260 N.E.2d 830 (1970) (call to scene of high school riot *was* an emergency); *Lakoduk v. Cruger*, 48 Wn.2d 642, 296 P.2d 690 (1956) (call to release 2–year–old child from locked bathroom *was* an emergency); Annot., 83 A.L.R.2d 383 (1962).

C. *Duties of the Parties.*

█ Funeral processions, however, are not governed in all circumstances by the statutes controlling the operation of "emergency vehicles." *Smith v. Ashmore, supra.* Those participating in a funeral procession must exercise ordinary care and are not released from the duty to see that which is to be seen in the exercise of ordinary care. *See Watkins v. Interstate Coach Co.*, 145 Wash. 221, 259 P. 393 (1927). Here, the motorcycle escort driven by the plaintiff was an authorized emergency vehicle under RCW 46.04.040. Its flashing red lights were tested and authorized pursuant to RCW 46.37.194, and the plaintiff was operating them as a favored driver, other drivers being required to yield the right–of–way pursuant to RCW 46.37.190(5). Due to the nature of the funeral procession, the slow speeds and the

respectful silence that are customary, the necessary exigencies were absent and plaintiff was not statutorily authorized to use a siren continuously. RCW 46.37.380(4). Since the plaintiff retained the status of a favored driver due to his state–authorized flashing red lights but was not authorized to use a siren, he was in a less advantageous position than one operating under RCW 46.61.035 and .210 pertaining to operators of authorized emergency vehicles who are authorized to use sirens.

Under RCW 46.37.190, other vehicles are obligated to yield the right–of–way to those vehicles authorized to operate flashing red lights, but a person in the position of the defendant was not obligated to pull over to the curb. The defendant was held by the verdict to have been negligent, and that decision has not been appealed. The plaintiff, albeit the favored driver, still had a duty to maintain a lookout, *Niven v. MacDonald,* 72 Wn.2d 93, 431 P.2d 724 (1967); *Owens v. Kuro,* 56 Wn.2d 564, 354 P.2d 696 (1960), and to exercise reasonable care for his own and others' safety. *Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975); *Jones v. Widing,* 7 Wn. App. 390, 499 P.2d 209 (1972). Whether or not the situation involved an "emergency call," the plaintiff had a duty to exercise reasonable care under the circumstances. *Hoffman v. Burkhead,* 353 Mich. 47, 90 N.W.2d 498 (1958). The circumstances did not diminish this duty of the plaintiff, for no favored driver is authorized to take chances, *Hadley v. Arms & Scott,* 136 Wash. 632, 241 P. 26 (1925), or to exercise his right–of–way when a reasonably prudent person would not. The plaintiff's right–of–way was relative, subject to the circumstances. Though he might expect that he would be granted the right–of–way, his right–of–way was not absolute and had to be exercised with caution. *Zahn v. Arbelo,* 72 Wn.2d 636, 434 P.2d 570 (1967); *Novis v. Tipton,* 63 Wn.2d 473, 387 P.2d 737 (1963); *Cox v. Kirch,* 12 Wn.2d 678, 123 P.2d 328 (1942); *Merrick v. Stansbury,* 12 Wn. App. 900, 533 P.2d 136 (1975); *Jones v. Widing,* 7 Wn. App. 390, 499 P.2d 209 (1972). The evidence reflects a motorcycle escort

(a) operating an emergency vehicle with red lights flashing, (b) traveling 2 feet to the left of and at an accelerating speed approximately twice as fast as that of a broken line of cars in a funeral procession, and (c) on a dark, rainy fall afternoon. Whether the motorcyclist had an opportunity to see and should have seen the left turn signal of a motorist in the column and taken necessary precautions, was for the finder of fact.

## II. DENIAL OF THE DIRECTED VERDICT

■■ The plaintiff contends that the trial court should have directed the jury to return a verdict in his favor. We disagree. A ruling on a motion for a directed verdict is not discretionary. *Shelby v. Keck,* 85 Wn.2d 911, 541 P.2d 365 (1975); *Rhoades v. DeRosier,* 14 Wn. App. 946, 546 P.2d 930 (1976). The moving party admits the truth of the opponent's evidence and all reasonable inferences that may be drawn therefrom, and the evidence must be considered in the light most favorable to the nonmoving party. The motion may be granted only if it can be said that, as a matter of law, no evidence or reasonable inferences therefrom existed to sustain a verdict for the opponent. *Rhoades v. DeRosier, supra; Martin v. Huston,* 11 Wn. App. 294, 522 P.2d 192 (1974). If substantial evidence supports the non-moving party's position, the motion must be denied. *Shelby v. Keck, supra; Monjay v. Evergreen School Dist. 114,* 13 Wn. App. 654, 537 P.2d 825 (1975). Questions concerning a defendant's negligence and a plaintiff's contributory negligence are usually questions of fact and should be withdrawn from the jury only in rare cases. *Rhoades v. DeRosier, supra; Brown v. Derry,* 10 Wn. App. 459, 518 P.2d 251 (1974). If substantial evidence has been presented which would support a reasonable conclusion that the plaintiff was negligent, the issue must be presented to the jury. *Harris v. Burnett,* 12 Wn. App. 833, 532 P.2d 1165 (1975); *McKillip v. Union Pac. R.R.,* 11 Wn. App. 829, 525 P.2d 842 (1974). Here, evidence was presented that the defendant looked in his mirror without seeing the plaintiff

coming, and that the plaintiff, by his own testimony, "wasn't paying any attention to the cars" he was passing. Under this testimony, it was proper to submit the question of contributory negligence to the jury.

### III. SUFFICIENCY OF THE INSTRUCTIONS

The instructions covered both plaintiff's and defendant's theories of the case. They are not repetitious and correctly state the law. *Fenimore v. Donald M. Drake Constr. Co.*, 87 Wn.2d 85, 549 P.2d 483 (1976). The plaintiff was not precluded from arguing his theory that the defendant did not signal his intention to turn left in time to give the plaintiff an opportunity to react to the signal.

The judgment is affirmed.

SWANSON and ANDERSEN, JJ., concur.