[No. 5261–1. Division One. March 26, 1979.]

David L. Doyle, *Respondent*, v. Nor–West Pacific
Company, et al, *Defendants*, Reid–Strutt
Company, *Appellant*.

*Davies, Pearson, Anderson, Seinfeld, Gadbow, Hayes & Johnson, Vincent L. Gadbow,* and *John C. Kouklis,* for appellant.

*Lane, Powell, Moss & Miller, G. Val Tollefson, Manza, Moceri, Gustafson & Messina, John L. Messina,* and *Michael S. Manza,* for respondents.

FARRIS, J.—David L. Doyle, while employed by Buffelen Woodworking Company in Tacoma, Washington, lost his left leg when it became entangled in the revolving screw of a screw conveyor. He brought this action against Nor–West Pacific Company, Inc., Don Pingrey, Bumstead–Woolford Company, Inc., Everett Metal Products, Inc., and Reid–Strutt Company, Inc., all alleged to have been involved in

the installation of the conveyor. Reid–Strutt appeals from a judgment against it in the amount of $747,500.

The screw conveyor transported shredded waste lumber which Buffelen used as fuel. It was 58 feet long and consisted of a continuous screw 16 inches in diameter operating in an 18–inch trough with a slightly hipped cover. For convenience in inspection and in dislodging choked material, the cover was divided into six 10–foot removable sections. The sections, made from 14–gauge sheet metal and weighing 97 pounds each, were bolted to an angle iron frame which supported the conveyor trough.

Approximately 1 week before Doyle was injured, the cover section on the discharge end of the conveyor was pushed back 2 feet by Buffelen employees so that they could make repairs on the screw. They failed to replace the cover. Later, another employee noticed the exposed screw and tried unsuccessfully to pull the cover section back into position. He then placed a piece of cardboard over the opening to keep the dust down.

Shortly after midnight, October 26, 1972, Doyle stood on the discharge end of the conveyor in order to reach adjacent machinery for the purpose of lubricating it. He stepped through the cardboard and into the rotating screw. His leg was mangled and subsequently amputated below the hip. Doyle instituted this action against Reid–Strutt et al alleging negligence in the installation of the conveyor. The jury, answering special interrogatories, found that Reid–Strutt was negligent, that its negligence was a proximate cause of Doyle's injury, and that Doyle was not negligent.

Reid–Strutt appeals from judgment entered on the jury verdict and from the trial court's denial of its motion for judgment n.o.v. or, in the alternative, new trial. The following questions are raised: (1) Was there substantial evidence that Reid–Strutt was negligent? (2) Was there substantial evidence that Reid–Strutt's negligence was a proximate cause of Doyle's injury? (3) Was there substantial evidence that Doyle's earning capacity was diminished

as a result of the accident? (4) Does the comparative negligence principle expressed in RCW 4.22.010 compel contribution among joint tort–feasors?

█ █ The premise upon which negligence rests is that an actor has a legally imposed duty, *i.e.,* a standard of conduct to which he must adhere. Negligence results from breach of that duty or deviation from that standard of conduct. *Amend v. Bell,* 89 Wn.2d 124, 570 P.2d 138 (1977). Questions concerning an actor's negligence are generally questions of fact. *Boyle v. Emerson,* 17 Wn. App. 101, 561 P.2d 1110 (1977). We will overturn a jury verdict only when it is clear there is no substantial evidence to support it. *Lamborn v. Phillips Pac. Chem. Co.,* 89 Wn.2d 701, 575 P.2d 215 (1978).

A jury could find from the evidence that the cover section over the discharge end of the conveyor was installed in such a manner that it could not be moved in any direction without beating and bending the 14–gauge steel. The conveyor trough and cover section extended into a fuel storage bin, the wall of which pressed against the top of the cover preventing it from being lifted up or pushed to either side. The cover could not be slid over the end of the conveyor outside the bin where it was blocked by the housing for the conveyor drive unit. It could only be pushed back into the bin. This was difficult because there was an abutting section inside the bin over which the end section had to be lifted, the wall of the bin pressed the cover down, and the cover section had to be twisted around an I–beam fitted into a notch in its side. After 45 minutes to an hour of beating and twisting with hammers and crowbars, the Buffelen crew was able to push the cover back 2 feet. An expert testified that it would have been equally difficult to pull the cover back into place.

The accident happened because the cover was being used as a platform. Although the testimony was sharply in conflict, there was substantial evidence from which the jury could find that Reid–Strutt installed the conveyor in such a manner that Doyle was required to use the cover of the

conveyor as a platform from which to lubricate adjacent machinery. The question turned in part on whether Reid–Strutt installed the screw conveyor before or after the installation of the adjacent machinery. While we might have resolved the conflicting evidence differently, our inquiry is limited to whether there was substantial evidence to support the verdict. *Hernandez v. Western Farmers Ass'n,* 76 Wn.2d 422, 456 P.2d 1020 (1969).

 The Supreme Court stated in *Boeing Co. v. State,* 89 Wn.2d 443, 447–48, 572 P.2d 8 (1978), *quoting* 65 C.J.S. *Negligence* § 84, at 1019 (1966):

> Due care requires that the precautions taken by a person responsible for a dangerous place or instrumentality be commensurate with the dangers to be apprehended, and be sufficient under ordinary circumstances to prevent accidents and injuries; but except in extraordinary circumstances the law does not require that one employ the safest of all possible procedures in order to avoid tort liability. Accordingly, what [precautions] are reasonable must depend on the circumstances of the particular case.

Doyle's expert testified that there were several simple and inexpensive measures which could have been taken to prevent accidents of the type which occurred: (1) The cover could have been cut into smaller sections so that it could be removed and replaced with greater ease. (There should have been a division at the I–beam and another at the wall of the bin.) (2) Microswitches could have been attached to the trough under the corners of each cover section. Such devices cut the electrical circuit and prevent the screw from turning whenever the cover is out of place. They were widely used in the industry at the time of the accident. (3) The conveyor blocked access to adjacent machinery which required frequent lubrication. It would have been unnecessary to stand on the screw conveyor had Reid–Strutt installed piped lubrication fittings so that the bearings could be lubricated from the ground. (4) In the alternative, a catwalk could have been constructed over the conveyor. Reid–Strutt contends that this opinion evidence

on how the accident might have been prevented was purely speculative in nature and therefore should have been excluded. We disagree. A trial court has wide discretion in determining the limits to be placed upon expert testimony. *Thornton v. Annest,* 19 Wn. App. 174, 574 P.2d 1199 (1978). The expert here testified only as to safety procedures and safety devices which were in common use in the industry. It was for the trier of fact to decide whether such precautions were in fact reasonable and would have prevented Doyle's injury. There was sufficient evidence to take to the jury the question of whether Reid–Strutt exercised reasonable care in the installation of the conveyor.

The issue of proximate cause is directly connected with the question of duty. *Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975). It is also a question for the trier of fact under the usual circumstances. *Levea v. G.A. Gray Corp.,* 17 Wn. App. 214, 562 P.2d 1276 (1977). Reid–Strutt argues, however, that, as a matter of law, its negligence, if any, was superseded by Buffelen's failure to replace the cover it removed, Buffelen's placing cardboard over the 2-foot opening, and Doyle's standing on the conveyor.

> There may, of course, be more than one proximate cause of an injury, and the concurring negligence of a third party does not necessarily break the causal chain from original negligence to final injury. *State v. Jacobsen,* 74 Wn.2d 36, 442 P.2d 629 (1968). Where a defendant's original negligence continues, and contributes to the injury, the mere fact another's intervening negligent act is a further cause of the accident does not prevent defendant's act from constituting a cause for which he is liable. *Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975); *State v. Jacobsen, supra; Eckerson v. Ford's Prairie School Dist. 11,* 3 Wn.2d 475, 101 P.2d 345 (1940).
>
> The intervening negligent act of another will not supersede the original actor's negligence as a proximate cause of an injury where the original actor should reasonably foresee the occurrence of such an event. *Fosbre v. State,* 70 Wn.2d 578, 424 P.2d 901 (1967); *Berglund v. Spokane County,* 4 Wn.2d 309, 103 P.2d 355 (1940);

Restatement (Second) of Torts § 447 (1965). Only when the intervening negligence is so highly extraordinary or unexpected that it can be said to fall without the realm of reasonable foreseeability as a matter of law, will it be held to supersede defendant's negligence. *Jones v. Leon,* 3 Wn. App. 916, 478 P.2d 778 (1970); *Sitarek v. Montgomery,* 32 Wn.2d 794, 203 P.2d 1062 (1949). Restatement (Second) of Torts § 447, *supra.*

*Smith v. Acme Paving Co.,* 16 Wn. App. 389, 396, 558 P.2d 811 (1976). Here, the jury could have found that Reid–Strutt was negligent in installing a screw conveyor which could operate uncovered and which had covers that could not be easily replaced once they had been removed. The jury could also have found that Reid–Strutt was negligent in installing the conveyor so that its protective cover was used as a platform to lubricate adjacent machinery and concluded that Reid–Strutt should have reasonably foreseen the occurrence of the intervening acts which contributed to the accident. In any event, we cannot conclude as a matter of law that the intervening negligence was so unexpected that it fell outside of the realm of reasonable foreseeability. *Smith v. Acme Paving Co., supra.*

Further, even if the intervening acts were as a matter of law unforeseeable, there would remain the question of whether the harm was within the risk created by Reid–Strutt's negligence. *See* Restatement (Second) of Torts § 442 B (1965).

█ The nature and the gravity of the injury provides a basis upon which the jury could reasonably conclude that Doyle's earning capacity had in fact been impaired. It was not error to permit Doyle to introduce expert testimony as to the extent of the impairment, there being substantial evidence that he was unable to work as he had before the accident. *See Bitzan v. Parisi,* 88 Wn.2d 116, 558 P.2d 775 (1977) and *Bradley v. Maurer,* 17 Wn. App. 24, 560 P.2d 719 (1977).

The argument that comparative negligence requires apportionment of damages between joint tort–feasors (Reid–Strutt and Buffelen) was recently rejected in

*Wenatchee Wenoka Growers Ass'n v. Krack Corp.*, 89 Wn.2d 847, 850, 576 P.2d 388 (1978):

[A]llowing the injured party an opportunity to recover *from* the tort–feasor (comparative negligence) and permitting an equitable distribution of damages *between* or *among* joint tort–feasors (contribution) pertain to interests wholly unrelated. Thus, we cannot agree that contribution necessarily follows as the corollary of comparative negligence.

Affirmed.

ANDERSEN and RINGOLD, JJ., concur.

Reconsideration denied May 31, 1979.

Review denied by Supreme Court September 21, 1979.